RAMONAS v. GRAND RAPIDS RAILWAY CO.

1. NEGLIGENCE—THEATRES AND SHOWS—CARRIERS—DUTY TO TRES-
PASSER.

Where plaintiff was in the employ of the Pullman Car
Company, and one of the two defendants operated an
amusement concession, consisting of a miniature train
and road, under a contract with the defendant railway
ompany, which was the proprietor of an amusement park,
testimony showing that the train was not in regular opera-
tion at the time plaintiff boarded it, but he merely in-
quired of the engineer whether he was getting up steam,
receiving no invitation to board the train, was insufficient
to sustain the action on the theory that he was accepted
as a passenger by the employees of the concessionaire and,
though he claimed to have been ready to pay his fare,
he could not recover against either defendant under evi-
dence that the ticket office was closed and the employees
at lunch, and the train merely ran for the purpose of
carrying some employees of the individual defendant, who
operated the train, to their work, and of bringing back
coal.

2. SAME—ACCEPTANCE BY CARRIER—CONTRACT.

Since there must be something from which it may be im-
plied that the passenger was accepted as such by the
carrier, the latter cannot be held liable in the absence
of proof of the purpose to accept and transport the pas-
senger.

Error to Superior Court of Grand Rapids; Dunham,
J.   Submitted October 16, 1916.   (Docket No. 72.)
Decided December 21, 1916.

Case by Alexander Ramonas against the Grand Rap-
ids Railway Company and Robert A. Best for personal
injuries.  A verdict was directed in favor of defendant

railway company, and plaintiff had judgment against defendant Best. Plaintiff and defendant Best bring error. Affirmed as to defendant railway company and reversed as to defendant Best, and no new trial granted.

*Hall, Gillard & Temple,* for appellant Best.

*E. A. Maher,* for plaintiff and appellant.

*Kleinhans, Knappen & Uhl,* for appellee.

KUHN, J. This action was brought to recover for personal injuries alleged to have been received by the plaintiff on May 27, 1915. The trial in the court below resulted in a verdict and judgment for $350 against the defendant Robert A. Best; a verdict having been directed in favor of the defendant the Grand Rapids Railway Company. Both the plaintiff and the defendant Best have brought the case here by writ of error; the plaintiff contending that the direction of the verdict in favor of the defendant railway company was erroneous, and the defendant Best contending that a verdict should have been directed in his favor, as well as in favor of the railway company.

The defendant railway company owns and operates an amusement park in East Grand Rapids, Kent county, known as "Ramona Park." Among the amusement concessions there operated was a miniature railway occupying an oval space 300 feet east and west by 100 feet north and south. There was a station at the east end, and a miniature tunnel, with mountain and other scenic effects, at the west end. The railway gauge was about 14 or 15 inches, the rails were laid upon plank ties, and there was a natural slope to the ground from the station to the north, the direction in which the train started. The equipment consisted of a diminutive locomotive engine, tender, and three small, open cars, carrying three grown people each.

This railway had been used intermittently from 1906 to 1914, at which time it was given to defendant Best and he operated it for a part of that year. On May 15, 1915, a written contract was entered into between defendant Best and the railway company by which Best agreed to operate the railway on defendant's grounds, and business for the season was commenced three days before the day of the accident.

The plaintiff, who is a Lithuanian by birth, has difficulty in speaking or understanding anything more than the common expressions of the English language. It is his claim that at the time of the accident he was employed by the Pullman Car Company, working nights. He had been out in the park before, and had seen pleasure seekers ride on the miniature railway, but had never seen the train operated in the morning. On the day of the accident he came to the park on his bicycle. From his testimony it does not appear at just exactly what hour he arrived there, but he did state that it was about 12 o'clock. From the testimony of the defendant's engineer it appears that it was about noon, and that the men were eating their dinner. It is not disputed that the ticket office was closed, and that no tickets were sold. It is plaintiff's claim that he saw some men getting on the car near the ticket office, and that he took a seat in the rear car, and he then described the accident as follows:

"When I see that little train in the station, and I see there was lots of fellows around the engine and lots of boys and some men, then I thought to myself, I go ride on that train, because I see lots of other fellows go on there and lots of men. I go to the engine man and ask him, I say, 'You making steam so that it goes now?' He says, 'Right now.' Then I talked to him some more, but the engine man didn't talk with me; he working around his engine; he not talking with me at all. Then I look in the train, lots of young fellows go on the train, and some man 37 years old,

and one old man of 65 or 70 years old sitting in the cars. I say, 'If there is a lot of people going on that little train, I am going to take that around too; I am going to take a seat'; and I go and take the last seat. I take last seat, last car and last seat. Then that little train stay in that station for about four minutes; everybody get in the cars, full cars, with young fellows and other men. Man 37 years old sit beside the old man 70 years old. Stand four minutes in the station. After four minutes that engine man he say, 'Everybody all ready.' Say, 'Yes.' 'All right.' Then he opened steam and the little engine started around and the little engine run very fast, terrible run, just like shoot, like a gun; then he run fast. Where it turns about 200 feet, way where the shed, long shed, where that little train goes through the shed, he runs fast. Those cars jump very fast over the tracks, and in that corner is a post, that shed post, and my head it strike the ground and shoulder on the ground, and the left leg strike in the post. * * *"

It is his further claim that at the time he boarded the train he had a dime in his hand to pay the fare when it should be called for.

From the testimony of other witnesses produced, it appears that there were several workmen of the defendant Best employed on the so-called railway tunnel, who were sitting around eating their dinner, and that after they had finished these employees boarded the train to ride down to the end of the tunnel to their work, where the engineer was going after a load of coal. The engineer stated that, while he was busy oiling the engine, the plaintiff approached him and asked if he was getting up steam to go, and that he told him that when he was ready to take on passengers he would let him know.

The only testimony relied upon to prove negligence on the part of the defendant is as to the speed of the train. It is urged that the testimony in support of this alleged negligence is not sufficient to raise a question for submission to the jury; but, be that as it may,

we are satisfied that a verdict should have been directed in favor of the defendant, for the reason that, viewing the testimony in the light most favorable to plaintiff's contention, he has not shown that he was a passenger on the railway train at the time of the accident. While it does appear that he was not very familiar with the English language, he was a man 36 years of age, and from his testimony it appears that he possessed the ordinary powers of observation. He had been to the park before, and had seen the amusement concessions operated. On the day in question he came at a time when they were not being operated; he saw the men congregated about the miniature railway; he saw some of them eating their dinner, and must have known that they were employees, and not people looking for recreation and pleasure. Instead of consulting the engineer about the price of admission or fare, or asking him when he would be ready to take on passengers for the day's business, according to his own testimony he simply asked him about making up steam. He saw the ticket office closed, he knew that no tickets were being offered for sale, and no effort made to collect fares. It does not appear that he was invited to board the train by anybody. It is true that the rule of law is that the acceptance of a passenger by a carrier need not be direct or express, but it must be something from which it can fairly be implied. 4 Elliott on Railroads (2d Ed.), p. 374. Under the record in this case we are of the opinion that there was nothing shown which warranted such an implication and the submission of this question to the jury. 2 Moore on Carriers, p. 955, and note, states the following:

"The acceptance of a passenger need not be direct or expressed, but there must be something from which it may be fairly implied [citing cases under note 51]. * * * The question is whether the person has pre-

sented himself in readiness to be carried under such circumstances in reference to time, place, manner, and condition that the carrier must be deemed to have accepted him as a passenger. * * * The test in determining who are passengers is whether the person desiring passage in good faith offered himself for the purpose of being carried as a passenger, and that he was as such accepted and received by the carrier, who undertook to transport him."

As, in our opinion, it clearly appears that the plaintiff was a trespasser at the time of the occurrence of the accident, the learned trial judge was in error in submitting the case to the jury, and should have directed a verdict in favor of both defendants at the close of the plaintiff's case.

We therefore affirm the judgment of the lower court in favor of the defendant, the Grand Rapids Railway Company, with costs to it, and reverse the judgment of the lower court as to the defendant Best, with costs to him, and no new trial granted.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.