# STATE OF MICHIGAN

# COURT OF APPEALS

CAROLYN SUE KELSEY and DAVID B.
KELSEY,

      Plaintiffs-Appellants,

v

NITA LINT,

      Defendant-Appellee.

FOR PUBLICATION
December 14, 2017
9:15 a.m.

No. 336852
Montcalm Circuit Court
LC No. 2015-020665-NO

Before: MARKEY, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this dog-bite case, plaintiffs[1] Carolyn Kelsey and David Kelsey appeal as of right the order granting summary disposition to defendant Nita Lint and denying plaintiffs' motion for sanctions under MCR 2.114(E). Because the trial court erred by concluding that Kelsey was a trespasser as a matter of law and dismissing plaintiffs' dog-bite claims on this basis, we reverse the trial court's grant of summary disposition to Lint and remand for further proceedings. In addition, because the trial court failed to determine whether Lint's attorney conducted a reasonable inquiry into the facts that formed the basis for the documents he signed under MCR 2.114(D), we vacate the trial court's denial of plaintiffs' request for sanctions and remand for specific findings on this issue.

On August 31, 2013, Kelsey was bitten by Lint's dog while on Lint's property. Kelsey had attended a garage sale at Lint's house on August 30, 2013. She returned to Lint's property about 5:00 p.m. on August 31, 2013, after the sale had ended, to inquire about an item that had been for sale the previous day. When Kelsey exited her vehicle, Lint's dog ran at Kelsey from the back of the house and bit Kelsey's leg. Following this incident, plaintiffs filed the current lawsuit alleging: (1) a statutory dog-bite claim under MCL 287.351, (2) a common law dog-bite claim premised on the assertion that Lint knew of the dog's violent propensities and acted negligently by failing to properly control the dog, and (3) a claim for loss of consortium.

---

[1] Plaintiffs Carolyn Kelsey and David Kelsey will be referred to collectively as "plaintiffs" in this opinion. References to "Kelsey" are to plaintiff Carolyn Kelsey in particular.

Lint moved for summary disposition under MCR 2.116(C)(8) and (C)(10), asserting that plaintiffs' dog-bite claims must fail because, when Kelsey returned to the property after the yard sale ended, she was a trespasser on Lint's property. Lint contended that, as a trespasser, Kelsey was not lawfully on the property for purposes of MCL 287.351. Likewise, for purposes of Kelsey's common law dog-bite claim, Lint maintained that her only obligation to a trespasser was to refrain from willful and wanton misconduct and that her ownership of a dog with no history of biting did not constitute willful or wanton misconduct.

Plaintiffs opposed Lint's motion for summary disposition, arguing that Kelsey was a licensee because, like the general public, Kelsey had an implied license to enter Lint's property and approach the house to knock on the front door. In opposing Lint's motion for summary disposition, plaintiffs also sought sanctions under MCR 2.114(E). Plaintiffs presented a recorded statement in which Lint admitted that her dog had previously bitten a mailman. Based on this statement, plaintiffs asserted that they were entitled to sanctions under MCR 2.114(E) because Lint or Lint's attorney signed documents that were not well-grounded in fact insofar as the documents indicated that Lint had no knowledge of her dog biting anyone before Kelsey.

Following a hearing, the trial court granted summary disposition to Lint. The trial court reasoned that Kelsey was an invitee when she attended Lint's garage sale; but, the court concluded as a matter of law that Kelsey was a trespasser when she returned to Lint's property after the sale. Based on Kelsey's status as a trespasser, the trial court dismissed plaintiffs' statutory and common law dog-bite claims. The trial court also denied plaintiffs' request for sanctions under MCR 2.114(E). Plaintiffs filed a motion for reconsideration, which the trial court denied. Plaintiffs now appeal as of right.

## I. KELSEY'S STATUS ON LINT'S PROPERTY

On appeal, plaintiffs first argue that the trial court erred by dismissing their statutory and common law dog-bite claims based on the conclusion that Kelsey was trespassing. Specifically, plaintiffs contend that anyone, including Kelsey, has an implied license to enter property and knock on the front door. According to plaintiffs, in the absence of a fence or "no trespassing" signs, Lint acquiesced in the general public's customary use of property. While there was a "no soliciting" sign on Lint's door, plaintiffs maintain that this does not render Kelsey a trespasser because she was not soliciting and, in any event, the dog attacked Kelsey before she had an opportunity to observe the sign. With regard to the garage sale, plaintiffs argue that the sale did not alter the general implied license that exists to enter property. Plaintiffs contend that, if anything, Lint's practices showed that she had acquiesced in allowing people to return to her property after a garage sale to take a second look at items. In these circumstances, plaintiffs assert that the trial court erred by concluding as a matter of law that Kelsey was a trespasser.

"This Court reviews a trial court's decision on a motion for summary disposition de novo." *Barnes v Farmers Ins Exch*, 308 Mich App 1, 5; 862 NW2d 681 (2014). Lint moved for summary disposition under MCR 2.116(C)(8) and (C)(10). However, the parties and the trial court relied on evidence outside of the pleadings, meaning that Lint's motion is properly reviewed under MCR 2.116(C)(10). *Sisk-Rathburn v Farm Bureau Gen Ins Co of Michigan*, 279 Mich App 425, 427; 760 NW2d 878 (2008). "When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court

-2-

considers all the evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Plaintiffs brought both a statutory dog-bite claim and a common law, negligence-based dog-bite claim. We begin with plaintiffs' statutory claim. The dog-bite statute is MCL 287.351(1), which states:

> If a dog bites a person, without provocation while the person is on public property, or lawfully on private property, including the property of the owner of the dog, the owner of the dog shall be liable for any damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness.

The statute imposes "almost absolute liability" on the dog owner, except when the dog bites after being provoked. *Koivisto v Davis*, 277 Mich App 492, 496; 745 NW2d 824 (2008). However, to succeed on a claim under MCL 287.351(1), the plaintiff must be on public property or "lawfully on private property." See *Cox v Hayes*, 34 Mich App 527, 531; 192 NW2d 68 (1971).

> A person is lawfully on the private property of the owner of the dog within the meaning of this act if the person is on the owner's property in the performance of any duty imposed upon him or her by the laws of this state or by the laws or postal regulations of the United States, or *if the person is on the owner's property as an invitee or licensee of the person lawfully in possession of the property* unless said person has gained lawful entry upon the premises for the purpose of an unlawful or criminal act. [MCL 287.351(2) (emphasis added).]

Licensees and invitees—in addition to trespassers—are common-law categories for persons who enter upon the land of another. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). Under MCL 287.351(2), invitees and licensees are "lawfully" on the property, but a trespasser cannot maintain a statutory dog-bite claim. See *Alvin v Simpson*, 195 Mich App 418, 421; 491 NW2d 604 (1992).

In this case, the parties focus their arguments on whether Kelsey was a licensee or a trespasser when she returned to Lint's property. "A 'trespasser' is a person who enters upon another's land, without the landowner's consent." *Stitt*, 462 Mich 596. In comparison, "[a] 'licensee' is a person who is privileged to enter the land of another by virtue of the possessor's consent." *Id.* Consent to enter may be either express or implied. *Pippin v Atallah*, 245 Mich App 136, 142; 626 NW2d 911 (2001). "Permission may be implied where the owner acquiesces in the known, customary use of property by the public." *Alvin*, 195 Mich App at 420.

Plaintiffs maintain that Kelsey had an implied license to enter Lint's property. In considering whether Kelsey had implied consent to enter Lint's property, we begin with the proposition that in the United States, and in Michigan in particular, based on the established

habits in this country, there is an implied license that permits ordinary persons to enter property, approach a home, and knock. See *Florida v Jardines*, 569 US 1, 8; 133 S Ct 1409; 185 L Ed 2d 495 (2013); *Kentucky v King*, 563 US 452, 469; 131 S Ct 1849; 179 L Ed 2d 865 (2011); *People v Frederick*, 500 Mich 228, 234-235; 895 NW2d 541 (2017). More fully, the United States Supreme Court has explained this implied license as follows:

> "A license may be implied from the habits of the country," notwithstanding the "strict rule of the English common law as to entry upon a close." *McKee v Gratz,* 260 US 127, 136; 43 SCt 16; 67 L Ed 167 (1922) (Holmes, J.). We have accordingly recognized that "the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds." *Breard v Alexandria,* 341 US 622, 626; 71 S Ct 920; 95 L Ed 1233 (1951). This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters. Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any private citizen might do." [*Jardines*, 569 US at 8.]

Based on *Jardines*, the Michigan Supreme Court has similarly recognized "an implied license to approach a house and knock." *Frederick*, 500 Mich at 238. The scope of this implied license is "defined by what *anyone* may do" based on "custom" and the "background social norms that invite a visitor to the front door." *Id.* at 238-239 (citation omitted; emphasis in original).[2] Quite simply, as a general proposition, the established customs in Michigan grant anyone, including Kelsey, an implied license to approach a house and knock on the front door.[3]

---

[2] Lint attempts to distinguish *Jardines* and *Frederick* by emphasizing that they are police "knock and talk" cases. However, while decided in the context of the Fourth Amendment, these cases "employed a property-rights framework" to determine what actions the police could lawfully take. See *Frederick*, 500 Mich at 235. In other words, the ability to approach a house and knock on a door is not unique to the police; rather, it is the well-established principle that *anyone* may approach a house and knock on the door that leads to the conclusion that the police also have an implied license to engage in such activity. *Id.* at 238-239.

[3] In contrast to this basic proposition, Lint relies on three cases: *Ramonas*, *Alvin*, and *Tieman*. Contrary to Lint's arguments, these cases do not compel the conclusion that Kelsey was a trespasser. First, *Ramonas* is easily distinguished because it involves a situation in which the plaintiff rode a train at an amusement park when the train was not being operated for public use. *Ramonas v Grand Rapids Ry Co*, 194 Mich 69, 73; 160 NW 382 (1916). While it is customary for the general public to approach a residential front door (and thus there is an implied license to do so), there is no implied license for the public to ride a train at an amusement park when the train is not open for business. Similarly, *Alvin* involved a scenario in which the plaintiff acted

Turning to the more specific facts of this case, reasonable minds could conclude that Lint acquiesced in the known, customary use of residential property by the public that involves approaching houses and knocking on the front door to make contact with the occupants. For instance, Lint's property did not have a fence that prevented entry. The record also indicates that, when approaching Lint's house from the street, there were no signs prohibiting entry or stating "no trespassing." Instead, an individual approaching Lint's home found an open, ungated driveway devoid of signs prohibiting entry. Cf. *People v Taormina*, 130 Mich App 73, 80; 343 NW2d 236 (1983); *Smith v VonCannon*, 283 NC 656, 662; 197 SE2d 524 (1973). From these circumstances, it could be inferred that Kelsey had an implied license, consistent with the accepted habits in Michigan, to enter the property and to approach Lint's front door.

In contrast to this conclusion, in terms of evidence suggesting that Kelsey should not have been on the property, it appears that there was a small "no soliciting" sign posted on a door leading to a portion of Lint's garage where she previously operated a beauty parlor. Posting a notice may serve to prevent the creation of an implied license. See Restatement (Second) of Torts § 330, comment e (1965). However, whether signs posted on property revoke the public's implied license to approach the house and knock depends on the context in which a member of the public encountered the signs and the message that those signs would have conveyed to an objective member of the public under the circumstances. *United States v Carloss*, 818 F3d 988, 994 (CA 10). See also Restatement (Second) of Torts § 330, comment e (1965) ("[T]he decisive factor is the interpretation which a reasonable man would put upon the possessor's act."). Viewing the evidence in this case in a light most favorable to Kelsey, it could be concluded that the location of the "no soliciting" sign was such that someone would have to drive down Lint's driveway to her house and approach the door before realizing that soliciting was not allowed. Further, "no soliciting" is not synonymous with "no trespassing" or "do not enter" and thus reasonable minds could conclude that a small "no soliciting" sign on a door to the garage would not prevent Kelsey from driving up Lint's driveway and exiting her vehicle. Cf. *Pippin*, 245 Mich App at 142 (a sign "forbidding people to park their vehicles in a particular place does not necessarily convey the message that they may not walk or ride through that same place").[4]

---

outside accepted customs. In *Alvin*, the plaintiff—a child trying to retrieve a ball—climbed over a fence into an enclosed back yard and the child admitted that he was trespassing when he did so. *Alvin*, 195 Mich App at 419. Again, while it is customary to approach front doors and knock, it is not customary to climb over fences and enter someone's backyard. Finally, *Tieman v Grinsteiner*, unpublished opinion of the Court of Appeals, issued October 27, 2011 (Docket No. 300265), is nonbinding, MCR 7.215(C)(1), and unpersuasive because this Court did not consider authority supporting the proposition that the public has an implied license to enter property, approach the front door, and knock. See *Jardines*, 569 US at 8; *Frederick*, 500 Mich at 234-235, 238-239.

[4] See also *State v Crowley*, __ So3d __, __ (2017); ("'No Soliciting' signs can be found in places where visitors are plainly welcome and expected, including supermarkets, malls, neighborhoods, hospitals, and stadiums."); *Furman v Call*, 234 Va 437, 440-441; 362 SE2d 709 (1987) ("The only signs read: 'Private Property, No Soliciting.' Clearly, the purpose of the signs is to prohibit soliciting, not the entry of motor vehicles operated by members of the public.").

According to Kelsey's description of events, she was attacked by Lint's dog within seconds of exiting her vehicle and she did not have a chance to approach Lint's door on which the sign was posted. In these circumstances, even if Kelsey's proposed inquiry could be considered "soliciting," given Kelsey's assertion that she was bitten as soon as she exited her vehicle, before she approached Lint's door or had a chance to speak with Lint, reasonable minds could conclude that she was still within the scope of the public's implied license when she exited her vehicle and was attacked by Lint's dog.

The only other fact presented by the parties as bearing on Kelsey's status is the garage sale held by Lint on the weekend of Kelsey's visit. Lint argues, and the trial court concluded, that, because the sale had ended, Kelsey was a trespasser when she returned. However, this reasoning ignores the public's implied license to enter the property and approach the door. That is, as noted by the trial court, when inviting the general public to her property for a sale, it could be concluded that Lint welcomed those individuals as invitees and, when the sale ended, it could be concluded that Kelsey lost her invitee status.[5] But, the end of a garage sale—and the loss of invitee status—do not eliminate the implied license that normally exists. In other words, while heightened invitee status may have existed during the sale, the end of the sale returned things to their normal state, which typically includes an implied license for anyone to enter the property and knock on the door.[6] See *Jardines*, 569 US at 8; *Frederick*, 500 Mich at 234-235, 238-239.

Overall, viewing the evidence in a light most favorable to Kelsey, while Kelsey did not have Lint's express permission to return to the property, it could be inferred that Kelsey had an implied license to enter the property and to approach Lint's house. Generally, when considering an entrant's status on the land, "if there is evidence from which one could infer a particular person's status on land, then the question is one for the jury." *Pippin*, 245 Mich App at 141. Consequently, because reasonable minds could conclude that Kelsey was a licensee, the trial

---

[5] "An 'invitee' is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." *Stitt*, 462 Mich at 596-597 (citation and quotation marks omitted; alteration in *Stitt*). While Kelsey may have been an invitee on Friday when attending Lint's garage sale, Kelsey does not contend on appeal that she was an invitee on Saturday when she returned after the sale.

[6] Additionally, on the more specific facts of this case, the trial court's conclusion that the end of the garage sale rendered Lint a trespasser ignores evidence that Lint had acquiesced to a practice by which Kelsey, and others, returned to Lint's property after a garage sale for a second look at items that had been available during the garage sale. Kelsey testified that, on a previous occasion, she had returned to Lint's property for a second look at an item after a sale. And, Lint confirmed that it was not uncommon for people to return to her property in the day or two following a garage sale. She stated that she preferred for people to call first; but, she conceded that they did not always do so. Faced with this practice, Lint made no effort—such as posting signs—to prevent people from returning. Thus, notwithstanding her "no soliciting" sign and the end of the garage sale, it reasonably could be concluded that Lint had acquiesced in a practice of allowing people to return to her property following a garage sale to take a second look at items.

-6-

court erred by determining that she was a trespasser as a matter of law and by concluding that Kelsey was not lawfully on the property within the meaning of MCL 287.351. Therefore, we reverse the trial court's grant of summary disposition to Lint on plaintiffs' statutory dog-bite claim under MCL 287.351.[7]

With regard to plaintiffs' common law dog-bite claim, plaintiffs' common law theory is premised on negligence.

> [A] negligence cause of action arises when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence. The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen. [*Trager v Thor*, 445 Mich 95, 106; 516 NW2d 69 (1994) (citation omitted).]

"To make a prima facie showing of negligence, a plaintiff need only establish that the defendant failed to exercise ordinary care under the circumstances to control or restrain the animal." *Hiner v Mojica*, 271 Mich App 604, 613; 722 NW2d 914 (2006).

In this case, the trial court determined that Kelsey was a trespasser, such that Lint's duty to Kelsey with regard to the dog only required her to refrain from willful and wanton misconduct. See *Stitt*, 462 Mich at 596 ("The landowner owes no duty to the trespasser except to refrain from injuring him by 'wilful and wanton' misconduct."). Based on this conclusion, the trial court also reasoned that Kelsey could not show a breach of this duty because keeping a dog on one's property did not constitute a willful and wanton act. However, as discussed, the trial court erred by concluding as a matter of law that Kelsey was trespassing when she was bitten by Lint's dog. Thus, the trial court erred by applying the willful and wanton standard of care and by dismissing plaintiffs' common law claim on this basis. Therefore, we also reverse the trial court's grant of summary disposition to Lint on plaintiffs' common law dog-bite claim.

## II. SANCTIONS UNDER MCR 2.114(E)

In the trial court, plaintiffs requested sanctions under MCR 2.114(E) based on the assertion that Lint or her attorney signed documents—including pleadings, Lint's summary disposition motion, and requests for admissions—that were not well-grounded in fact. Plaintiffs also sought an evidentiary hearing on this issue to determine whether Lint's conduct and that of her attorney was reasonable in light of Lint's recorded statement in which she admitted that her dog previously bit a mailman. On appeal, plaintiffs argue that the trial court erred by denying their request for sanctions and by failing to hold an evidentiary hearing on this issue.

---

[7] Having concluded that Kelsey's status is an issue for the jury, *Pippin*, 245 Mich App at 141, we reject plaintiffs' assertion that they were entitled to summary disposition under MCR 2.116(I)(2).

This Court reviews for clear error a trial court's decision whether to impose sanctions under MCR 2.114. *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008). "A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id.*

Under MCR 2.114(D), the effect of signing a document is as follows:

The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that

(1) he or she has read the document;

(2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Under this rule, "an attorney is under an affirmative duty to conduct a reasonable inquiry into both the factual and legal basis of a document before it is signed." *Guerrero*, 280 Mich App at 677. "The reasonableness of the inquiry is determined by an objective standard and depends on the particular facts and circumstances of the case." *LaRose Mkt, Inc v Sylvan Ctr, Inc*, 209 Mich App 201, 210; 530 NW2d 505 (1995). "The filing of a signed document that is not well grounded in fact and law subjects the filer to sanctions pursuant to MCR 2.114(E)." *Guerrero*, 280 Mich App at 678. Specifically, MCR 2.114(E) provides:

If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

"[I]f a violation of MCR 2.114(D) has occurred, the sanctions provided for by MCR 2.114(E) are mandatory." *Guerrero*, 280 Mich App at 678.

In this case, in documents signed by Lint's attorney, including her motion for summary disposition, requests for admissions, and other documents, Lint repeatedly denied knowing that her dog had bitten anyone beside Kelsey or that the dog was aggressive. However, in February of 2014, Lint gave a recorded statement while speaking with a representative from her insurance agency. In this statement, she admits that her dog previously bit a mailman, that he was

-8-

"protective" of her, and that he had "shown aggression" toward people.[8] This recording was referenced during Lint's deposition in June of 2016, at which time Lint acknowledged that she had given a recorded statement and Lint's attorney said that he "would look into whether or not there was actually a recorded statement taken or not." Yet, according to statements by Lint's counsel in the trial court, he did not obtain the recording until 2 or 3 weeks before the summary disposition hearing, which was held in November of 2016. Apparently without obtaining this recording or listening to its contents, Lint's counsel moved for summary disposition and signed other documents, asserting that there was no indication that Lint's dog was dangerous and that Lint had not kept a dog that was known to bite people. There is no indication that defense counsel attempted to correct these representations after obtaining Lint's recorded statement.

While Lint gave obviously inconsistent statements, the question for purposes of MCR 2.114(E) is whether, as the person signing the motion for summary disposition and other documents under MCR 2.114(D), Lint's attorney made a reasonable inquiry into both the factual and legal basis of the documents before they were signed.[9] *Guerrero*, 280 Mich App at 677. Whether counsel conducted a reasonable inquiry should be determined by the trial court and reviewed by this Court for clear error. *Id.* However, in this case, the trial court failed to consider this question and made no findings regarding whether Lint's attorney made a reasonable inquiry. Instead, the trial court remarked that, in general, Lint's attorney was a "gentlemen" and that his "integrity" was not in question. But, an attorney's general character is not at issue under MCR 2.114(D) and (E). Rather, the question is whether, based on the facts and circumstances of this particular case, *LaRose Mkt, Inc*, 209 Mich App at 210, Lint's attorney made a reasonable inquiry into the facts supporting the motion for summary disposition and other documents before signing those documents. On the facts of this case, given that the issue was raised below and the trial court failed to decide whether defense counsel conducted a reasonable inquiry within the meaning of MCR 2.114(D), we vacate the trial court's denial of plaintiffs' motion for sanctions and remand to the trial court to make specific findings regarding this issue. See *In re Forfeiture of Cash and Gambling Paraphernalia*, 203 Mich App 69, 72-73; 512 NW2d 49 (1993). If defense counsel violated MCR 2.114(D), sanctions under MCR 2.114(E) are mandatory. *Guerrero*, 280 Mich App at 678.

---

[8] Veterinarian records for Lint's dog also indicate that the dog was "very aggressive with people coming to the home."

[9] On appeal, Lint does not deny that her dog bit a mailman. Instead, she contends that sanctions are not appropriate because she has a "bad memory." No finding has been made that Lint has a "bad memory." In any event, considering her attorney's conduct before signing documents under MCR 2.114(D), the fact that Lint has a "bad memory" could be seen to suggest that counsel's inquiry was inadequate. In other words, in light of Lint's "bad memory," a reasonable inquiry might include obtaining and listening to a statement made by Lint relatively close in time to the dog-bite incident.

Reversed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction. Having prevailed in full, plaintiffs may tax costs pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause