*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL RADKE and KATHLEEN RADKE,

Plaintiffs-Appellants,

v

CHARLES TRUESDELL, doing business as
TRUESDELL INDUSTRIES,

Defendant-Appellee,

and

RONALD SWENSON,

Defendant.

UNPUBLISHED
December 29, 2022

No. 359866
Ingham Circuit Court
LC No. 20-000513-NO

Before: PATEL, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In this premises liability and negligence case, plaintiffs Michael Radke and Kathleen Radke (collectively, "the Radkes") appeal as of right the order granting summary disposition to defendant, Charles Truesdell, under MCR 2.116(C)(10).[1] We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

In 2019, Ronald Swenson hired general contractor Truesdell to construct Swenson's new home in Williamston, Michigan. Swenson is a hobby electrician and Truesdell agreed that Swenson could complete much of the electrical installation in the home. Michael and Swenson were long-time friends who often helped each other with home projects. On October 9, 2019, when Swenson's home was under construction, Swenson invited Michael to his home to help him install light fixtures on the front porch. While there, Michael went to retrieve a wooden plank

---

[1] The parties stipulated to the dismissal of defendant Ronald Swenson and he is not a party to this appeal.

from the home's exterior. As he was walking backwards through the garage carrying the plank, he bumped into a wall, causing Michael to step backwards and fall through a large opening to the basement. Although a subcontractor was going to install stairs from the garage to the basement, he had yet to do so, and there were no barriers surrounding the opening. Michael was severely injured in the fall.

The Radkes filed this lawsuit alleging negligence against Truesdell for Michael's injuries and a derivative claim for loss of consortium on Kathleen's behalf. Truesdell moved for summary disposition under MCR 2.116(C)(10) contending that Michael's claim sounded in premises liability. He further argued that Michael could not recover under premises liability because the opening was open and obvious and Truesdell had no duty to safeguard Michael, a licensee, from this danger. Moreover, no special aspects existed which could render Truesdell liable for Michael's injuries. The trial court agreed and granted the motion for summary disposition. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A motion is properly granted pursuant to MCR 2.116(C)(10) when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 415. This Court "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 415-416.

> In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted).]

## III. LAW AND ANALYSIS

The Radkes' complaint asserted a claim of ordinary negligence against Truesdell. Truesdell's motion for summary disposition alleged, in part, that the complaint sounded in premises liability rather than ordinary negligence. The trial court agreed with Truesdell, resolving the motion for summary disposition under principles of premises liability. On appeal, the Radkes challenge the trial court's conclusion regarding premises liability, arguing that their complaint was premised on a theory of ordinary negligence not premises liability. However, even under a

premises liability analysis, they believe Truesdell should not have been granted summary disposition. We disagree.

## A. PREMISES LIABILITY VS. ORDINARY NEGLIGENCE

We must first determine whether the trial court correctly concluded the Radkes' complaint sounded in premises liability rather than ordinary negligence. The Radkes allege their complaint sounds in ordinary negligence because it challenges Truesdell's failure to ensure the safety of visitors to the home. We disagree.

"Courts are not bound by the labels that parties attach to their claims." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691; 822 NW2d 254 (2012). Instead, "the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Id*. at 691-692. "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Id*. at 692. An action sounds in premises liability "[w]hen an injury develops from a condition of the land . . . ." *Woodman v Kera, LLC*, 280 Mich App 125, 153; 760 NW2d 641 (2008). By contrast, "a claim of ordinary negligence is based on the underlying premise that a person has a duty to conform his or her conduct to an applicable standard of care when undertaking an activity." *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 624; 971 NW2d 716 (2021).

The Radkes' complaint sounds in premises liability rather than ordinary negligence. The complaint stated Michael's injuries occurred after he "fell in a large, deep, unguarded hole created by Defendant TRUESDELL at the residential home he was constructing . . . ." According to the Radkes, Truesdell had a duty to make safe the area around the opening, and Truesdell had breached this duty by failing to install fall protection and by allowing Swenson to perform work at the home despite the presence of the opening.

The Radkes' assertion that Michael's injuries were caused by Truesdell's failure to act does not transform this case into one of ordinary negligence. See, e.g. *Buhalis*, 296 Mich App at 692 (rejecting the plaintiff's assertion that their claim of ordinary negligence was proper because the defendant failed to remove ice from a cement patio, causing the plaintiff to slip and fall). Michael's injuries resulted from his fall through the opening in the garage floor to the basement. An opening in the floor is a condition of the land. Thus, the Radkes' complaint sounds in premises liability because Michael's injuries were caused by a condition on the land. The trial court did not err in concluding that the complaint sounded in premises liability.

## B. POSSESSION AND CONTROL

We next consider whether Truesdell had possession and control over the home at the time Michael fell. The Radkes argue Truesdell did not have possession and control over the home. Therefore, Truesdell cannot invoke certain defenses that are available in premises-liability cases. We disagree.

"Premises liability is conditioned upon the presence of both possession and control over the land" because "[t]he man in possession is in a position of control, and normally best able to prevent any harm to others." *Merritt v Nickelson*, 407 Mich 544, 552; 287 NW2d 178 (1980)

(quotation marks and citation omitted). In determining whether a party has possession and control over land, "[o]wnership alone is not dispositive." *Id*. at 552. "Possession and control are certainly incidents of title ownership, but these possessory rights can be 'loaned' to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility." *Id*. at 552-553. This Court has previously extended possession and control to contractors, recognizing the principle set forth in the 2 Restatement Torts, 2d, § 384, p. 289, which states:

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge. [*Finazzo v Fire Equip Co*, 323 Mich App 620, 628-629; 918 NW2d 200 (2018).]

In *Finazzo*, this Court concluded the contractor had possession and control of the premises because the contractor was "performing changes to the property by methods that were under [the contractor's] control." *Id*. at 629-630. As such, the contractor was in the best position to prevent harm to others. *Id*. at 630.

According to the Radkes, Truesdell lacked possession and control because he could not regulate who Swenson invited to the site, and he lacked the ability to manage Swenson's actions while there. However, the question of possession and control is not whether the defendant *did* control others' actions, but rather, who is in the best *position* to control others' actions. See *Finazzo*, 323 Mich App at 627 (quotation marks, citation, and emphasis omitted) ("[A] party in possession is in a position of control, and [is] normally best able to prevent any harm to others."). Swenson hired Truesdell to be the general contractor. By doing so, Swenson ceded authority to Truesdell to oversee the construction project. This is supported by testimony that Swenson sought Truesdell's permission to complete certain aspects of the project and that Truesdell was responsible for day-to-day construction decisions. As general contractor, Truesdell was responsible to ensure the safety of others while on the premises. Thus, the trial court did not err in concluding Truesdell had possession and control over the premises.

## C. APPLICATION OF PREMISES LIABILITY

We must next consider whether the trial court correctly applied principles of premises liability in granting Truesdell's motion for summary disposition. The Radkes do not challenge the trial court's finding that the opening was open and obvious. Instead, they argue that Michael was an invitee to the premises. They also contend that there were special aspects of the opening such that Truesdell had a duty to protect Michael. We disagree.

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). The duty owed by a land possessor to a visitor "depends on whether the visitor was a trespasser, licensee, or invitee at the time of the injury." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013). While invitees

are afforded "the highest level of protection," *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000), there is generally no duty to protect visitors of any type from open and obvious[2] dangers. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 611; 537 NW2d 185 (1995). However, with respect to invitees specifically, a duty may be conferred "if special aspects of a condition make even an open and obvious risk unreasonably dangerous." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001).

"An 'invitee' is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make it safe for the invitee's reception." *Stitt*, 462 Mich at 596-597 (quotation marks and citation omitted). "[I]nvitee status must be founded on a commercial purpose for visiting the owner's premises." *Id*. at 607.

On the other hand, "a 'licensee' is a person who is privileged to enter the land of another by virtue of the possessor's consent." *Kelsey v Lint*, 322 Mich App 364, 371; 912 NW2d 862 (2017). "A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Stitt*, 462 Mich at 596. "Typically, social guests are licensees who assume the ordinary risks associated with their visit." *Id*.

In his motion for summary disposition, Truesdell argued that, on the day of the fall, Michael was a licensee to the property because his purpose in going there was to have a social visit with Swenson. Accordingly, Truesdell had no duty to protect Michael from the danger posed by the opening, which was open and obvious. In support of this assertion, Truesdell provided the trial court an e-mail from Swenson to Michael sent the morning of the fall. It stated: "If you have anytime [sic] this morning and have any interest in hoisting me around in the tractor bucket, feel free to stop over. I'll be outside as soon as it gets light enough to see." Also included with the motion were Swenson's and Michael's deposition testimonies in which they both stated that Michael was not being paid to help Swenson. In Swenson's deposition testimony, he agreed that Michael's presence at the home was not for any "business or commercial" interest. In response, the Radkes argued Michael was an invitee to the property because "[Michael's] free labor conferred a commercial benefit" to Truesdell.

It is Michael's relationship with Truesdell—not Swenson—that controls the scope of Truesdell's duty of care owed. See *Petraszewsky v Keeth*, 201 Mich App 535, 541; 506 NW2d 890 (1993) (recognizing that a visitor to property can be a social guest licensee as to one, but invitee as to another possessor of property). We need not decide here whether Michael was Swenson's invitee or licensee because, based on the undisputed facts of the case, Michael was Truesdell's licensee.

---

[2] A condition is open and obvious when "an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012).

As noted, under the burden-shifting framework of MCR 2.116(C)(10), once the moving party supports its position with documentary evidence, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto*, 451 Mich at 362. The nonmoving party "must go beyond the pleadings" and "present documentary evidence establishing the existence of a material factual dispute." *Id*. at 362-363. Other than their assertion that Michael's purpose in visiting the property was to "confer[] a commercial benefit," to Truesdell, the Radkes offered no documentary evidence of the same. Because invitee status is premised on whether the visitor was at the property for a commercial purpose, the trial court did not err in concluding there was no genuine issue of fact that Michael was not an invitee the day of the fall.

On appeal, the Radkes argue that other cases decided by this Court have concluded that a plaintiff was an invitee despite the absence of a commercial purpose. In support of this argument, they cite to our decision in *White v Badalamenti*, 200 Mich App 434; 505 NW2d 8 (1993). The plaintiff in *White* was injured after she slipped and fell on ice outside the defendants' home who had been providing babysitting services. *Id*. at 435. Although the defendants were not paid for their services, this Court concluded that the finder of fact could have found a commercial purpose existed because "[t]he deposition supports a reasonable inference that, rather than a social visit, the plaintiff's presence on [the] defendants' property was part of a mutually beneficial, albeit informal, exchange of services." *Id*. at 436-437.

The Radkes contend that under *White*, a commercial purpose can be found if there is an exchange of services. In their view, because Michael helped Swenson install the light fixtures, Michael indirectly conferred a commercial benefit to Truesdell. We disagree. Again, Truesdell satisfied his burden as the moving party under MCR 2.116(10). Thus, the burden shifted to the Radkes to present *evidence* of an "exchange of services" that benefited *Truesdell*. While there was evidence that Michael went to the property to help Swenson, there was no evidence that Michael had arranged a mutually beneficial exchange of services with Truesdell. Furthermore, the Radkes offer no authority for their argument that a commercial benefit can be found for services offered to a third-party. "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *American Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 705; 609 NW2d 607 (2000). Accordingly, we reject the Radkes' assertion that Michael's status on the premises was as an invitee.

Finally, we decline to consider the Radkes' argument that the opening in the garage floor was unreasonably dangerous and, therefore, special aspects existed such that Truesdell had a duty to protect Michael from the danger posed by the opening. As noted, a duty is conferred when the visitor is an invitee and "special aspects of a condition make even an open and obvious risk unreasonably dangerous." *Lugo*, 464 Mich at 517. There is no genuine dispute of fact that Michael was not an invitee. Therefore, we need not consider the question of special aspects.

Affirmed.

/s/ Sima G. Patel
/s/ Thomas C. Cameron
/s/ Anica Letica

-6-