*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUDREY LEIGH ANDRUS,

      Plaintiff/Counterdefendant-
      Appellant,

v

CELESTE DUNN and PLUNKETT COONEY,

      Defendants/Counterplaintiffs-
      Appellees.

UNPUBLISHED
April 9, 2020

No. 345824
Oakland Circuit Court
LC No. 2017-161741-NM

---

AUDREY L. WALDRON, also known as
AUDREY L. ANDRUS,

      Plaintiff/Counterdefendant-
      Appellant,

v

JAMES E. WALDRON,

      Defendant/Counterplaintiff-
      Appellee.

Nos. 346897; 348305
Lapeer Circuit Court
Family Division
LC No. 2011-044159-DO

---

Before: TUKEL, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

-1-

This case involves three consolidated appeals, all arising from the divorce of Audrey Leigh Andrus from her husband James E. Waldron ("Waldron").[1]  Docket No. 345824, involved a suit by Andrus, as plaintiff/counterdefendant, against her former attorneys, Celeste Dunn and the firm of Plunkett Cooney, for legal malpractice; Dunn and Plunkett Cooney, as defendants/counterplaintiffs, counterclaimed against Andrus for a little over $4,000 in unpaid attorney fees.  Andrus further appeals a September 26, 2018 order denying her motion for a stay of an earlier grant of summary disposition to Dunn and Plunkett Cooney; that order also remanded the case to the 48th District Court with respect to Dunn and Plunkett Cooney's counterclaim against Andrus.

In Docket No. 346897, Andrus, appeals as of right a December 4, 2018 order in the divorce case denying her motion for postjudgment relief and awarding attorney fees from Andrus to Waldron as a sanction.  In Docket No. 348305, Andrus appeals by delayed leave granted[2] the same December 4, 2018 order being appealed as of right in Docket No. 346897.[3]  As noted, all of the appeals were consolidated.  *Waldron v Waldron*, unpublished order of the Court of Appeals, entered July 3, 2019 (Docket No. 348305).  We affirm the grant of summary disposition to Dunn and Plunkett Cooney in Docket No 345824, and in that same case we also affirm the remand to the 48th District Court regarding Plunkett Cooney's counterclaim for unpaid attorneys' fees.  In Docket No. 348305 we affirm the denial of post-judgment relief to Andrus.  In Docket No. 346897, we reverse the portion of the December 4, 2018 order awarding sanctions from Andrus to Waldron and affirm that order in all other respects.

## I.  UNDERLYING FACTS

In 1972, Andrus and Waldron were married.  In 2011, Andrus filed a complaint for divorce, and Waldron filed a countercomplaint for divorce.  In 2013, the parties reached a mediated settlement agreement regarding some issues and agreed to submit other issues, primarily regarding property division and spousal support, to arbitration.  On June 4, 2013, the arbitrator issued an award addressing issues agreed upon by the parties or ruled upon by the arbitrator.  The issue of

---

[1] In Docket Nos. 346897 and 348305, Andrus is identified in the caption as Audrey L. Waldron, also known as Audrey L. Andrus.  We will refer to her as "Andrus" throughout this opinion for the sake of consistency.

[2] *Waldron v Waldron*, unpublished order of the Court of Appeals, entered July 3, 2019 (Docket No. 348305).  The divorce case had been heard in the Lapeer County Circuit Court.  The malpractice case and the counterclaim for attorney fees arising from it had been heard in the Oakland County Circuit Court, which is the reason that the attorney fees claim was remanded to the 48th District Court.

[3] The appeal as of right in Docket No. 346897 is from the portion of the order awarding attorney fees from Andrus to Waldron, whereas the appeal by delayed leave granted in Docket No. 348305 is from the portion of the order denying Andrus's motion for postjudgment relief.  Despite this, Andrus's appellate briefs in both of those appeals provide virtually identical arguments concerning the substantive issues related to the denial of her request for postjudgment relief, but her appellate brief in Docket No. 346897 also addresses the attorney fee issue in addition to the other issues.

spousal support from Waldron to Andrus was reserved. The arbitrator ruled that the parties' villa on the Caribbean island of St. Martin was to "be sold forthwith[]" with the net sale proceeds to be divided equally between the parties. The arbitration award also included a provision stating that the parties had agreed that the arbitrator would resolve any disputes that might develop over the interpretation of the settlement agreement and arbitration award, including issues regarding the sale of the St. Martin villa. Further, the arbitration award was to be incorporated and merged into the judgment of divorce. On June 5, 2013, the trial court entered the judgment of divorce. The issue of spousal support was reserved in accordance with the arbitration award. With respect to the division of property, the parties' settlement agreement and the arbitration award were incorporated and merged into the judgment of divorce as if rewritten in their entireties.

On May 15, 2015, a hearing was held at which a settlement agreement regarding spousal support and the St. Martin property was placed on the record. The gist of the agreement was that Waldron was to pay Andrus $1.35 million in exchange for Andrus giving up both her interest in the St. Martin property and her claim for spousal support. After the terms of the settlement were placed on the record, Andrus testified that she wanted the trial court to approve the settlement agreement and that she was satisfied with her legal representation. On July 21, 2015, the trial court entered an order that Andrus's attorneys had submitted regarding the settlement agreement, but the trial court later vacated that order because Waldron's attorney objected to it. Around the same time, Andrus's attorneys, Dunn and Plunkett Cooney, moved to withdraw as counsel of record for Andrus on the ground that there had been a substantial breakdown in the attorney-client relationship.

On August 11, 2015, a hearing was held on the motion to withdraw and on Waldron's objections to Andrus's proposed order regarding the settlement agreement. Dunn sought to withdraw at the outset of the hearing, but the trial court would not allow her to withdraw until the substantive issue regarding the order on the settlement agreement had been decided. At the conclusion of the hearing, the trial court granted Dunn and Plunkett Cooney's motion to withdraw and ruled that it would enter the proposed order that Waldron's counsel had submitted regarding the settlement agreement. An order regarding the settlement agreement was entered on August 11, 2015. Like the vacated July 21, 2015 order, the August 11, 2015 order set forth Waldron's obligation to pay Andrus $1.35 million, along with interest if not paid by August 15, 2015, and described the termination of Andrus's interest in the St. Martin property and the waiver of her claim to spousal support. The order stated, in relevant part, that Waldron

> shall pay to [Andrus] the sum of [$1.35 million] on or before August 15, 2015 without any interest. In the event [Waldron] fails to pay the sum of [$1.35 million] on or before August 15, 2015, then [Waldron] shall pay interest in the amount of 5% per annum for the period of August 16, 2015 to November 15, 2015. In the event that [Waldron] fails to pay the sum of [$1.35 million] plus any accrued interest as set forth herein on or before November 15, 2015, interest shall accrue at a rate of 8% per annum from and after November 15, 2015 until paid by [Waldron].

The key difference between the August 11, 2015 order and the vacated July 21, 2015 order as relevant here was that the August 11, 2015 order did not contain a provision stating that, if payment was not made by August 15, 2015, Andrus could pursue collection remedies such as a receivership.

On August 21, 2015, Andrus, now represented by her new counsel, filed what she called a "motion to compel compliance with order, motion for money judgment, motion for relief from order, and motion for attorney fees." Andrus raised numerous issues, but the only request pertinent to these appeals is her request for a money judgment. Andrus stated that Waldron had failed to pay Andrus $1.35 million by August 15, 2015, as purportedly required by the parties' settlement agreement. Andrus thus requested a money judgment against Waldron for $1.35 million with interest accruing at 5% per annum. On September 1, 2015, the trial court denied the motion. Andrus filed a delayed application for leave to appeal the September 1, 2015 order, which this Court denied for lack of merit in the grounds presented. *Waldron v Waldron*, unpublished order of the Court of Appeals, entered June 15, 2016 (Docket No. 330629). Andrus later filed other motions seeking to enforce Waldron's payment obligation under the settlement agreement. The trial court denied those motions as well.

On October 30, 2017, Andrus filed her legal malpractice action against Dunn and Plunkett Cooney. Andrus alleged that the terms of the settlement agreement placed on the record on May 15, 2015, rendered unenforceable Waldron's obligation to pay $1.35 million to Andrus because the time of payment was left to Waldron's discretion. Andrus claimed that Dunn and Plunkett Cooney committed legal malpractice in the following ways: failing to secure and place on the record specific terms ensuring the enforceability of the settlement agreement; abandoning Andrus by abruptly withdrawing from their representation of her; and failing to counsel Andrus regarding her right to spousal support. Andrus asserted that the malpractice resulted in damages that included: the unavailability of the property settlement funds; attorney fees and costs; and loss of interest income. On December 15, 2017, Dunn and Plunkett Cooney filed an answer denying liability and asserted numerous affirmative defenses; they also asserted a counterclaim seeking to recover $4,387.41 in unpaid attorney fees.

The parties in the malpractice action filed competing motions for summary disposition. On September 4, 2018, the trial court issued a written opinion and order granting Dunn and Plunkett Cooney's motion for summary disposition and denying Andrus's motion for summary disposition. The trial court concluded that Andrus was judicially estopped from pursuing her malpractice claim given her testimony at the May 15, 2015 settlement hearing at which she asked the court to approve the settlement agreement and expressed satisfaction with her legal representation. The trial court also concluded that Andrus's claim for damages was premised on speculation because she could still collect the amount owed by Waldron in the divorce case. Given the trial court's resolution of those issues, the court declined to reach Dunn and Plunkett Cooney's other arguments regarding why summary disposition in their favor was proper. On September 26, 2018, the trial court entered a final order denying Andrus's motion for a stay pending appeal and remanding the case to the 48th District Court with respect to Dunn and Plunkett Cooney's counterclaim. On October 9, 2018, in Docket No. 345824, Andrus filed a claim of appeal from the September 26, 2018 order.

Meanwhile in the divorce case, Andrus, through her latest attorney, Lawrence J. Acker, who also was her attorney in the malpractice case, filed another postjudgment motion seeking relief on October 17, 2018. Andrus asked for: an order compelling the sale of the St. Martin property and distribution of the sale proceeds; appointment of a receiver or a similar judicial intervention to effectuate the sale of the St. Martin property; a creditor's examination; liens on Waldron's assets; an accounting showing the condition of the St. Martin property in the wake of two hurricanes; a bond to cover Waldron's obligation to sell the St. Martin property; or referral to

continuing arbitration in which the arbitrator would have authority to compel the sale of the St. Martin property and to distribute the proceeds. In her motion, Andrus repeatedly stated that, under the August 11, 2015 order, Waldron's $1.35 million payment to her was supposed to be made *from the proceeds of the sale of the St. Martin property*, which was simply not correct; the order set forth the obligation to pay and provided for interest if not timely paid, but it was silent as to the source of the funds. Nonetheless, in response to Andrus's motion, Waldron provided an affidavit explaining that the St. Martin property had been listed with various realtors, both before and subsequent to the entry of the August 11, 2015 order on the settlement agreement, and that it remained listed despite damage caused by Hurricane Irma in September 2017; the real estate listings were attached to the affidavit. No offers to purchase the property had been received yet. According to Waldron, the hurricane caused property damage in excess of $700,000, and he attached a repair estimate to the affidavit. Waldron had spent more than $500,000 on repairs as a result of the hurricane.

On November 27, 2018, a hearing was held on Andrus's motion for postjudgment relief. The trial court announced from the bench its decision to deny Andrus's motion and to award $2,000 in attorney fees from Andrus to Waldron as a sanction. The court noted that interest was accruing on the $1.35 million that Waldron owed Andrus under the terms of the August 11, 2015 order. The court further stated:

> It seems that the primary enforcement mechanism is to make sure that the property is listed and, if damaged, it's being repaired and those items have been answered in the Affidavit of James Waldron of November 26th, 2018, which I think could have been determined by a simple search of the property. If the property is listed I assume it's public and people want to find out whether the property's offered for sale and [Andrus] could have looked and determined whether it was listed for sale, whether she asked Mr. Waldron directly or not and it should have been asked whether there was [sic] any damages and if he's provided proof that he's making repairs, which he has done now. So with respect to the request for post-judgment relief requesting one, judicial enforcement of certain judgment of divorce provisions to compel the sale of the property and distribution of the sale proceeds, that request is denied because it appears Mr. Waldron is doing everything he can do to comply with that term in the judgment of divorce.

> Number two, appoint a receiver or similar court appointed court authorized independent intervention in the sale; the court denies that request as well because the property has been and is being listed after being repaired.

> Number three, issuance of an order authorizing the conduct of a creditor's exam pursuant to MCR 2.621. The Court's going to deny that request as well because it finds that there is no judgment and Mr. Waldron has done everything he can do to comply with the term of the order authorized August 11th, 2015.

> Number four, issuance of an order authorizing the filing of liens on [Waldron's] assets and real property is also denied for the same reason.

-5-

Number five, issuance of an order for an accounting showing the condition of the Saint Martin property after Hurricane Irma and Hurricane Maria and any efforts to sell, refinance or pay off debts owed on the Saint Marten [sic] property; likewise denied because the Court is satisfied that the Affidavit of James Waldron answers those questions.

Number six, issuance of an order for a bond to cover [Waldron's] obligation to sell the Saint Martin Property within a reasonable time to be set by this Court or the arbitrator. That would also be denied as the Court sees no necessity for a bond. And the Court has retained jurisdiction so it will also deny the request to refer the matter to arbitration.

With respect to any sanctions, the Court has heard this issue itself and the predecessor has heard it, it's been to the Court of Appeals. Mr. Waldron has flown here from—the representation is he's flown here from out of the country to be here so the Court will award two thousand dollars contribution toward attorney fees.

On December 4, 2018, the trial court entered its order denying Andrus's motion for postjudgment relief and awarding attorney fees from Andrus to Waldron in the amount of $2,000 as a sanction. On December 19, 2018, Andrus filed a claim of appeal in Docket No. 346897 from the December 4, 2018 order awarding attorney fees from Andrus to Waldron. On April 2, 2019, Andrus filed in Docket No. 348305 a delayed application for leave to appeal the December 4, 2018 order denying her motion for postjudgment relief in the divorce case. She also filed a motion to consolidate that appeal with the appeals in Docket Nos. 345824 and 346897. On July 3, 2019, this Court entered an order granting the delayed application for leave to appeal in Docket No. 348305 and granting the motion to consolidate that appeal with the appeals in Docket Nos. 345824 and 346897. *Waldron v Waldron*, unpublished order of the Court of Appeals, entered July 3, 2019 (Docket No. 348305).

## II. MALPRACTICE DAMAGES

In Docket No. 345824, Andrus argues that the trial court erred in concluding that her allegation of legal malpractice failed because the proof of the element of damages was speculative, and she also takes issue with the trial court's ruling that her cause of action was barred by judicial estoppel. We need not reach either issue, however, because the plain language of the order complained is inadequate as a matter of law to sustain Andrus's legal malpractice claim.

The elements of a cause of action for legal malpractice are: "(1) the existence of an attorney-client relationship (the duty); (2) negligence in the legal representation of the plaintiff (the breach); (3) the negligence was a proximate cause of an injury (causation); and (4) the fact and extent of the injury alleged (damage)." *Barrow v Pritchard*, 235 Mich App 478, 483-484; 597 NW2d 853 (1999). Here, Andrus cannot establish that she was damaged by Dunn's representation because, contrary to her complaint, the settlement agreement was enforceable.

The settlement agreement stated, in relevant part, that Waldron

shall pay to [Andrus] the sum of [$1.35 million] on or before August 15, 2015 without any interest. In the event [Waldron] fails to pay the sum of [$1.35 million] on or before August 15, 2015, then [Waldron] shall pay interest in the amount of 5% per annum for the period of August 16, 2015 to November 15, 2015. In the event that [Waldron] fails to pay the sum of [$1.35 million] plus any accrued interest as set forth herein on or before November 15, 2015, interest shall accrue at a rate of 8% per annum from and after November 15, 2015 until paid by [Waldron].

The language of the settlement clearly established that Waldron was required to pay Andrus $1.35 million on or before August 15, 2015. See, e.g., *People v Kern*, 288 Mich App 513, 519; 794 NW2d 362 (2010) (holding that the word shall "generally indicates a mandatory, rather than permissive, duty"); Scalia & Garner, *Reading Law: the Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 114 ("[W]hen the word *shall* can reasonably be read as mandatory, it ought to be so read."). If Waldron failed to pay by August 15, 2015, he would be forced to pay interest. But the interest requirement did not negate the language requiring Waldron to pay Andrus $1.35 million on or before August 15, 2015.

The settlement agreement Dunn negotiated for Andrus created an affirmative obligation for Waldron to pay Andrus $1.35 million by August 15, 2015. The trial court incorrectly interpreted the agreement to not impose an obligation to pay at any particular time, but Dunn did not cause the trial court to interpret the settlement incorrectly or cause this Court to deny Andrus's application for leave to appeal that decision in Docket No. 330629.[4] Consequently, any damages Andrus suffered as a result of how the settlement agreement has been enforced were not caused by Dunn. Thus, as a matter of law, Dunn did not commit legal malpractice when she represented Andrus and negotiated the settlement agreement.

Despite our conclusion that Waldron had an affirmative obligation to pay Andrus $1.35 million by August 15, 2015, this issue is complicated by Andrus's prior appeal, which this Court dismissed "for lack of merit in the grounds presented." *Waldron*, unpub order at 1. In her application for leave to appeal in Docket No. 330629, Andrus argued that the terms of the settlement agreement required Waldron to pay her $1.35 million by August 15, 2015, and that the interest payments were an enforcement mechanism, in the form of a penalty, *in addition to* Waldron's obligation to pay by that date. We agree, but are prohibited from so holding owing to the law of the case doctrine.

In addressing the law of the case doctrine, this Court has explained:

> The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue. Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case. The primary

---

[4] This Court denied, in Docket No. 330629, Andrus's application for leave to appeal the trial court's interpretation that the settlement agreement did not create an affirmative obligation for Waldron to pay. That issue is discussed in greater detail beginning with the next paragraph.

purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. [*Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001) (citations omitted).]

"The doctrine applies only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Pioneer State Mut Ins Co v Michalek*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket Nos. 344567 and 344577); slip op at 4 (quotation marks and citation omitted). "[W]hen [this Court] den[ies] an application from a noninterlocutory order for lack of merit in the grounds presented, the order means what it says—it is on the merits of the case." *Id*. The law of the case doctrine applies "to orders denying applications for 'lack of merit in the grounds presented.' " *Id*.

The law of the case doctrine, however, does not necessarily apply in every case with a prior judgment. The law of the case doctrine does not apply if there has been a material change of fact, *Bruce Twp v Gout* (*After Remand*), 207 Mich App 554, 557-558; 526 NW2d 40 (1994), or if there has been an intervening change of law, *Ashker ex rel Estate of Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001). Neither exception applies here.

This Court's order in Andrus's prior appeal, Docket No. 330629, dismissed her application for leave to appeal "for lack of merit in the grounds presented." *Waldron*, unpub order at 1. Consequently, this Court actually decided that there was no merit to Andrus's claim and, therefore, the law of the case doctrine applies absent a material change in fact or intervening change in law. See *Pioneer State Mut Ins Co*, ___ Mich App at ___; slip op at 4. The language of the settlement agreement has not changed since this Court's order in Docket No. 330629, denying Andrus's application for leave to appeal, nor has there been any change in the applicable law. Consequently, the trial court's determination that the settlement agreement did *not* create a mandatory obligation for Waldron to pay Andrus $1.35 million by August 15, 2015 must remain in effect in this case, due to application of the law of the case doctrine.

Thus, at this point Andrus cannot collect from Dunn because Dunn did not commit malpractice; and we cannot reverse the trial court's order that the settlement agreement did not create an affirmative obligation for Waldron to pay Andrus by August 15, 2015, as that is now law of the case. This conclusion notwithstanding, Andrus is not left without a remedy. Rather, "when a contract is silent as to time of performance or payment, absent any expression of a contrary intent, the law will presume a reasonable time." *Duke v Miller*, 355 Mich 540, 543; 94 NW2d 819 (1959). More than four and a half years have passed since the original August 15, 2015 date by which Waldron was obligated to pay Andrus the $1.35 million. Consequently, any "reasonable time" for requiring payment has long since passed. Thus, Waldron must pay Andrus $1.35 million, in addition to the interest as calculated by the settlement agreement, with all deliberate speed. We note that the parties appear to believe that the $1.35 million should be paid from proceeds of the St. Martin villa sale. We strongly disagree, as the settlement agreement contains no such requirement. Frankly, we are baffled how and why the parties could have concluded that the sale of the St. Martin villa could have had any effect on when Waldron's obligation to pay Andrus the $1.35 million arose. As such, while we do not believe it should be necessary to say so, we take this opportunity to state that Waldron must (i.e., shall) pay Andrus, with all deliberate speed, the $1.35 million, plus interest computed per the formula in the settlement agreement, from November 15, 2015 through the date of payment; neither a potential sale of the St. Martin villa nor the failure to secure such a sale shall have any effect on his payment obligation.

-8-

## III. LAW OF THE CASE

Next, Andrus argues in Docket Nos. 346897 and 348305 that the law of the case doctrine is inapplicable in the divorce case. We agree.[5]

The applicability of the law of the case doctrine presents a question of law that is reviewed de novo. *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008).

As stated earlier, the law of the case doctrine "applies only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Pioneer State Mut Ins Co*, ___ Mich App at ___; slip op at 4 (quotation marks and citation omitted). "[W]hen [this Court] den[ies] an application from a noninterlocutory order for lack of merit in the grounds presented, the order means what it says—it is on the merits of the case." *Id*. The law of the case doctrine applies "to orders denying applications for 'lack of merit in the grounds presented.' " *Id*.

The law of the case doctrine is inapplicable here because the issues presented in the instant appeals were not actually decided, either implicitly or explicitly, in the prior appeal. In Docket No. 330629, Andrus filed a delayed application for leave to appeal the trial court's September 1, 2015 order denying her request for a money judgment and awarding sanctions to Waldron in connection with Andrus's request for a money judgment. On June 15, 2016, this Court entered an order denying the delayed application for leave to appeal for "lack of merit in the grounds presented," *Waldron*, unpub order at 1, meaning those issues were decided on the merits. In the present divorce appeals, by contrast, Andrus appeals the trial court's December 4, 2018 order denying her October 17, 2018 motion for postjudgment relief and awarding sanctions to Waldron in connection with that motion. In her October 17, 2018 motion, Andrus had asked for numerous forms of relief: an order compelling the sale of the St. Martin property and the distribution of the sale proceeds; appointment of a receiver or a similar judicial intervention to effectuate the sale of the St. Martin property; a creditor's examination; liens on Waldron's assets; an accounting showing the condition of the St. Martin property; a bond to cover Waldron's obligation to sell the St. Martin property; or referral to continuing arbitration in which the arbitrator would have had authority to compel the sale of the St. Martin property and to distribute the proceeds; but none of those forms of relief had been at issue in the application which was denied on June 15, 2016.

In short, although Andrus is again seeking to enforce the settlement agreement, she is doing so in ways that differ from what she was seeking in the prior appeal. The relief sought and denied in 2018, the order at issue here, differs from the requested relief at issue in the prior appeal in which this Court denied leave to appeal for lack of merit. This Court's June 15, 2016 order denying leave to appeal for lack of merit was limited to the issues presented in that appeal and did not preclude Andrus from seeking relief later through other means. Because the issues in the present

---

[5] We note that our earlier discussion regarding the law of the case's application to both Waldron's obligation to pay Andrus $1.35 million plus interest and Andrus's legal malpractice case is separate from our discussion of the law of the case here. This section exclusively applies to the claims raised by Andrus in Docket Nos. 346897 and 348305.

appeals were not actually decided in the prior appeal, the law of the case doctrine is inapplicable.[6] But the inapplicability of the law of the case doctrine does not end the analysis with respect to the denial of Andrus's October 17, 2018 motion, because the denial of that motion is affirmed for the reasons set forth later in this opinion.

## IV. POSTJUDGMENT RELIEF

Andrus next argues in Docket Nos. 346897 and 348305 that the trial court in the divorce case erred in denying her October 17, 2018 motion for postjudgment relief. We disagree.

Andrus argues that she was entitled to equitable remedies to enforce provisions of the judgment of divorce and the August 11, 2015 order. "A trial court's decision concerning equitable issues is reviewed de novo, although its findings of fact supporting the decision are reviewed for clear error." *Eller v Metro Indus Contracting, Inc*, 261 Mich App 569, 571; 683 NW2d 242 (2004). "Clear error exists when this Court is left with the definite and firm conviction that a mistake was made." *In re Contempt of Henry*, 282 Mich App 656, 669; 765 NW2d 44 (2009).

Although Andrus challenges the trial court's denial of her October 17, 2018 motion for postjudgment relief, she does not address each of the particular forms of relief requested in that motion, instead focusing on her request that the trial court compel the sale of the St. Martin property. She contends that the St. Martin property must be sold forthwith as required by the judgment of divorce. She further argues that, under the August 11, 2015 order, Waldron must pay Andrus $1.35 million with interest from the proceeds of the sale of the St. Martin property.

It is certainly true that a circuit court has inherent authority to enforce its own judgments and directives. MCL 600.611 states, "Circuit courts have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments." This Court has explained:

> A court possesses inherent authority to enforce its own directives. A divorce case is equitable in nature, and a court of equity molds its relief according to the character of the case; once a court of equity acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy. [*Draggoo v Draggoo*, 223 Mich App 415, 428; 566 NW2d 642 (1997) (quotation marks and citations omitted).]

The flaw in Andrus's appellate presentation is that she fails to provide any meaningful argument challenging the trial court's reasoning for denying her motion. The trial court found that Waldron was doing everything he could in order to comply with the requirement that he sell the St. Martin property and then pay the amount he owes Andrus out of the sale proceeds. The court

---

[6] Given that the law of the case doctrine is inapplicable, it is unnecessary to consider Andrus's suggestion that this Court should recognize and apply a manifest injustice exception to the law of the case doctrine. And in any event, Andrus's assertion that manifest injustice exists is premised on her contention that the rulings in the divorce case and the malpractice case are incompatible, a contention that we conclude is incorrect for the reasons already discussed at length earlier.

took note of Waldron's affidavit stating that he has listed the property for sale for most of the period since (and before) the entry of the August 11, 2015 order and that he has expended more than $500,000 to make repairs in light of extensive hurricane damage to the property. Andrus provides virtually no argument challenging the trial court's finding on this critical point. "When an appellant fails to address the basis of a trial court's decision, this Court need not even consider granting relief." *Seifeddine v Jaber*, 327 Mich App 514, 522; 934 NW2d 64 (2019).[7] The closest Andrus comes to addressing the trial court's reasoning is to state that Waldron should have sold the property before the hurricanes struck and that, because repairs have now been made, "there is no reason not to order a sale to proceed 'forthwith' at the present time." But this argument fails to contest the trial court's finding that Waldron is presently doing everything he can to sell the property. Andrus does not explain how a sale can be compelled in the absence of a willing buyer. Andrus cannot leave it to this Court to make her arguments for her. *Id*. at 521 ("Plaintiff cannot leave it to this Court to make his arguments for him. His failure to adequately brief the issue constitutes abandonment.") (citations omitted).

It is also notable that, at the hearing on Andrus's motion, her counsel conceded that Andrus's motion had erred in alleging that Waldron had never listed the property for sale. Andrus's counsel further acknowledged that he had received part of the relief he was requesting because he and Waldron's counsel "had a meaningful conversation about the reporting that he's going to provide voluntarily regarding the status of the [St. Martin property] in the future. That's what I was seeking in part, but I'm also seeking a specific determination from you that the equitable relief I've requested is being denied." Andrus's counsel stated that Waldron's November 26, 2018 affidavit, which was filed in response to Andrus's motion for postjudgment relief, confirmed the current status of the St. Martin property. Waldron's counsel acknowledged that he had agreed to keep Andrus's counsel advised regarding the status of the St. Martin property. Waldron's counsel also said that "it's our full intention to get the property sold as quickly as possible." Waldron's counsel stated that "there's potential of [Waldron] getting a couple million dollars also out of the deal, so why wouldn't he?" On appeal, Andrus fails to discuss the effect of her counsel's acknowledgement that Andrus had received part of the relief requested in the motion given the parties' agreement that Waldron's counsel will voluntarily provide information regarding the status of the St. Martin property. Andrus also does not explain why her current counsel (who is also her counsel in the malpractice case) asked the trial court at the motion hearing to *deny* the very equitable relief he was seeking.

Overall, Andrus's appellate presentation on this issue is deficient in numerous respects. Andrus has not established that the trial court erred in denying her October 17, 2018 motion for postjudgment relief.

---

[7] Andrus devotes much of her brief to challenging Waldron's claim that the August 11, 2015 order superseded the judgment of divorce in regard to Waldron's obligation to sell the St. Martin property forthwith, but there is no indication that the trial court adopted Waldron's argument on that point. The trial court found that Waldron was doing everything he could to sell the property.

V. ARBITRATION

Andrus next argues in Docket Nos. 346897 and 348305 that the trial court in the divorce case erred in denying her request to compel arbitration of the St. Martin property dispute. We disagree.

This issue involves review of the judgment of divorce and the August 11, 2015 order, to determine if arbitration is required concerning the St. Martin property dispute. This Court reviews de novo a trial court's interpretation of a judgment or order. *Neville v Neville*, 295 Mich App 460, 466; 812 NW2d 816 (2012). Judgments or orders entered pursuant to an agreement of the parties are interpreted in the same manner as contracts. *Id*. "The main goal in interpreting a contract is to honor the parties' intent. Courts must discern the parties' intent from the words used in the contract and must enforce an unambiguous contract according to its plain terms." *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006) (citation omitted).

In determining whether arbitration is required under an arbitration agreement, this Court examines the language of the agreement according to its plain and ordinary meaning. *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016). The general policy of this state favors arbitration, although a party cannot be compelled to arbitrate an issue that the party did not agree to submit to arbitration. *Id*. In deciding whether a dispute is arbitrable, a court must avoid analyzing the substantive merits of the dispute. *Id*. at 296. In addition, "[w]hen two agreements cover the same subject matter and include inconsistent terms, the later agreement supersedes the earlier agreement." *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 130; 649 NW2d 808 (2002).

The June 4, 2013 arbitration award provided that the parties had agreed that the arbitrator would resolve any disputes that might develop over the interpretation of the arbitration award, as well as any involving the 2013 settlement agreement. The arbitration award listed, without limitation, possible disputes that would be submitted to arbitration, including "[a]ny disputes which arise over the sale of the St. Martin villa including, but not limited to, listing agent, listing price, price reductions, sale terms, use and occupancy pending sale, closing, and computation and distribution of net sale proceeds pursuant to this [a]greement." The arbitration award was to be incorporated and merged into the judgment of divorce. The June 5, 2013 judgment of divorce provided that, regarding the division of property, the parties' settlement agreement and the arbitration award were incorporated and merged into the judgment of divorce as if rewritten in their entirety.

The August 11, 2015 order regarding the parties' 2015 settlement of the spousal support and St. Martin property issues provided, in relevant part, that Andrus "hereby waives any and all claims she may have relating in any way to St. Martin, including, without limitation, any claim pursuant to any prior arbitration awards, judgments, orders, judgment of divorce, and any and all fees and costs related thereto." The August 11, 2015 order also provided that the trial court "shall retain jurisdiction to enforce the terms and conditions of this agreement."

The arbitration award, which was adopted into the judgment of divorce, thus required arbitration of any disputes that arose regarding the St. Martin property. But the August 11, 2015 order provides that Andrus waives any claims she has relating to St. Martin, including pursuant to

-12-

any prior arbitration awards and the judgment of divorce, and that the trial court has jurisdiction to enforce the terms and conditions of the settlement agreement regarding the St. Martin property issue. Because the judgment of divorce and the August 11, 2015 order cover the same subject matter but contain inconsistent provisions regarding the forum for resolving any disputes on the St. Martin property issue, the August 11, 2015 order reflects the later agreement and thus supersedes the judgment of divorce on that issue.[8] *CMI Int'l*, 251 Mich App at 130. The trial court therefore properly denied Andrus's request to compel arbitration of the St. Martin property dispute.

## VI. SANCTIONS

Finally, Andrus argues in Docket No. 346897 that the trial court in the divorce case clearly erred in imposing sanctions against Andrus. We agree.

A trial court's decision whether to impose sanctions is reviewed for clear error. *Kelsey v Lint*, 322 Mich App 364, 379; 912 NW2d 862 (2017). "A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

MCR 2.625(A)(2) provides, "In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591(1) states, "Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." MCL 600.2591(3)(a) provides:

"Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

Further, MCR 1.109(E) provides, in relevant part:

---

[8] We note that, while the settlement agreement failed to explicitly state that any claims under the arbitration agreement related to the St. Martin property were foreclosed by the settlement agreement, it effectively did so by stating that the trial court "shall retain jurisdiction to enforce the terms and conditions of this agreement."

(5) Effect of Signature. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:

> (a) he or she has read the document;

> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

Therefore, a sanctions award is required when a party or an attorney files a frivolous action or defense. *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731; 909 NW2d 890 (2017). "[A]n attorney is under an affirmative duty to conduct a reasonable inquiry into both the factual and legal basis of a document before it is signed. The reasonableness of the inquiry is determined by an objective standard and depends on the particular facts and circumstances of the case." *Kelsey*, 322 Mich App at 379 (quotation marks and citation omitted).

In granting sanctions, the trial court in the divorce case stated:

> With respect to any sanctions, the Court has heard this issue itself and the predecessor has heard it, it's been to the Court of Appeals. Mr. Waldron has flown here from—the representation is he's flown here from out of the country to be here so the Court will award two thousand dollars contribution toward attorney fees.

The trial court's reasoning for granting sanctions was flawed. Although the trial court had previously heard and rejected motions by Andrus to enforce the settlement agreement, the motion at issue here sought different forms of relief from those previously at issue. The fact that earlier requests for relief were denied did not preclude Andrus from seeking the relief sought in the instant motion. Also, the trial court's reference to this Court's June 15, 2016 order denying leave to appeal for lack of merit was inapt because, as noted earlier, the law of the case doctrine is inapplicable. Also, the fact that Andrus's instant motion was denied does not alone make it frivolous. *Jerico Constr, Inc v Quadrants, Inc*, 257 Mich App 22, 36-37; 666 NW2d 310 (2003). Overall, the trial court's decision to award sanctions against Andrus was clearly erroneous.

Although it is not necessary to the conclusion reached above, we also find problematic the absence of any evidence or reasoning to support the amount awarded as a sanction. See *Smith v*

*Khouri*, 481 Mich 519, 530-531; 751 NW2d 472 (2008) (setting forth the proper legal framework for analyzing the reasonable amount of sanctions that are due). Waldron presented no evidence regarding the amount of his attorney fees or other expenses, such as the cost of traveling to the motion hearing, and the trial court offered no real analysis. The trial court's minimal reasoning did not make sense because the court referred to Waldron's claim that he flew to Michigan for the hearing, but the court then said it was awarding $2,000 in attorney fees, not for travel expenses.

## VII. CONCLUSION

In Docket No. 345824, we affirm the judgment that neither Dunn nor Plunkett Cooney committed legal malpractice. Additionally, Waldron must pay Andrus $1.35 million, plus interest per the formula set forth in the settlement agreement, with all deliberate speed. In Docket No. 346897, we reverse the portion of the December 4, 2018 order awarding sanctions against Andrus and affirm that order in all other respects. In Docket No. 348305, we affirm the portion of the December 4, 2018 order denying Andrus's motion for postjudgment relief. Dunn and Plunkett Cooney, as prevailing parties in Docket No. 345824, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Jane E. Markey
/s/ Brock A. Swartzle

-15-