*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER JON MILDENBERG,

       Plaintiff-Appellee,

v

SARAH ELIZABETH MILDENBERG,

       Defendant-Appellant.

UNPUBLISHED
September 29, 2022

Nos. 357175; 358328
St. Joseph Circuit Court
LC No. 15-000692-DM

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

These consolidated appeals[1] arise from a post-judgment parenting-time order and an order granting attorney fees. In Docket No. 357175, defendant appeals by delayed leave granted[2] a January 6, 2021, order containing a modified parenting-time schedule. We vacate that order in part. In Docket No. 358328, defendant appeals as of right an August 6, 2021, order awarding $59,387.88 in attorney fees and costs to plaintiff. We vacate in part that order and remand for further proceedings.

## I. DOCKET NO. 357175

In Docket No. 357175, defendant was granted leave to appeal the January 6, 2021, parenting time order entered by the court after at least a five-day evidentiary hearing. Defendant's challenges to the order are numerous, though none convince us that outright reversal is warranted.

---

[1] *Mildenberg v Mildenberg*, unpublished order of the Court of Appeals, entered January 4, 2022 (Docket Nos. 357175 and 358328).

[2] *Mildenberg v Mildenberg*, unpublished order of the Court of Appeals, entered September 30, 2021 (Docket No. 357175).

## A. STANDARDS OF REVIEW

In matters involving child custody, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. This Court will not interfere with the trial court's factual findings unless the facts clearly preponderate in the opposite direction. Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic. Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law. This Court reviews the trial court's determination regarding a child's best interests for clear error. This Court gives deference to the trial court's factual judgments and special deference to the trial court's credibility assessments. [*Brown v Brown*, 332 Mich App 1, 8-9; 955 NW2d 515 (2020) (quotation marks and citations omitted).]

Evidentiary decisions are reviewed for an abuse of discretion. *Varran v Granneman*, 312 Mich App 591, 621; 880 NW2d 242 (2015). "A trial court abuses its discretion if its decision results in an outcome outside the range of principled outcomes." *Id*. This Court reviews de novo the interpretation and application of the court rules. *Lech v Huntmore Estates Condo Ass'n*, 315 Mich App 288, 290; 890 NW2d 378 (2016).

## B. MODIFICATION OF PARENTING TIME UNDER THE CHILD CUSTODY ACT

The Child Custody Act provides a comprehensive statutory scheme for resolving child custody disputes, *Yachcik v Yachcik*, 319 Mich App 24, 51; 900 NW2d 113 (2017), the purposes of which "are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes." *Lieberman v Orr*, 319 Mich App 68, 78; 900 NW2d 130 (2017) (quotations and citation omitted). The Child Custody Act contains a presumption that it will "be in the best interests of a child for the child to have a strong relationship with both of his or her parents." *Luna v Regnier*, 326 Mich App 173, 180; 930 NW2d 410 (2018) (quotation marks and citation omitted).

To protect children's stability, MCL 722.27 imposes a gatekeeping function on the trial court by providing standards a moving parent must satisfy before a court can consider whether to change custody or parenting time. *Lieberman*, 319 Mich App at 78. "As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Id*. at 81. See also *Kaeb v Kaeb*, 309 Mich App 556, 569; 873 NW2d 319 (2015).[3]

If a proper cause or a change in circumstances is shown, the trial court "shall [still] not modify or amend its previous judgments or orders or issue a new order so as to change the

---

[3] Neither party has raised an issue regarding proper cause or change in circumstances.

established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c).

> This heightened evidentiary burden for altering a child's established custodial environment recognizes the commonsense proposition that a child benefits from the permanence and stability of an established custodial environment, and therefore that such an environment should not lightly be altered. Importantly, MCL 722.27(1)(c) does not limit this heightened evidentiary burden to orders that expressly alter a child's established custodial environment. Rather, while a trial court has the authority to enter an ex parte interim order concerning parenting time, see MCL 722.27a(12), it may not enter such an order if it also alters the child's established custodial environment without first making the findings required by MCL 722.27(1)(c).

> An order altering a child's established custodial environment has serious consequences for all the parties involved, as it deprives both the child and one parent of precious time together and alters that parent's evidentiary burdens at any *subsequent* custody hearing. In many instances, it is difficult—if not altogether impossible—to effectively remedy on appeal, and to restore the *status quo ante*, following an erroneous order altering a child's established custodial environment without causing undue harm to the child. Thus, to restate, it is critical that trial courts, in the *first instance*, carefully and fully comply with the requirements of MCL 722.27(1)(c) before entering an order that alters a child's established custodial environment. Any error in this regard may have lasting consequences yet effectively be irreversible. [*Daly v Ward*, 501 Mich 897, 898 (2017) (citations omitted).]

When considering the application of MCL 722.27(1)(c), it is the substance and effect of the order—not the label used—that determines whether the order affects custody or parenting time. *Id.* See also *Lieberman*, 319 Mich App at 77 n 4, 86 n 9. Simply stated, a *substantial* change of parenting time may alter the established custodial environment of the children, and if it does, the change must be reviewed as a change of custody. *Lieberman*, 319 Mich App at 86 n 9, 89-90.

In matters affecting custody, the movant must prove by clear and convincing evidence that the proposed change is in the best interests of the child. *Id.* at 83-84. To determine the best interests of a child, the trial court is required to consider the 12 best-interest factors found in MCL 722.23. *Kessler v Kessler*, 295 Mich App 54, 63-64; 811 NW2d 39 (2011). And, before modifying custody, even on a temporary basis, the trial court is required to hold an evidentiary hearing. *O'Brien v D'Annunzio*, 507 Mich 976, 976 (2021); *Grew v Knox*, 265 Mich App 333, 336; 694 NW2d 772 (2005). "The trial court's ultimate findings relative to custody must be based upon competent evidence adduced at the hearing." *Duperon v Duperon*, 175 Mich App 77, 79; 437 NW2d 318 (1989).

## 1. DELEGATION OF AUTHORITY TO THE GAL

Defendant first challenges the November 20, 2019, order appointing Pamela Reed as the GAL, arguing that the trial court improperly delegated its custody and parenting-time decision-

making to the GAL. But in making this argument, defendant fails to recognize that her application for leave to appeal only challenged the January 6, 2021, parenting time order, not the November 20, 2019, order containing the delegation provision. Because that November order was not appealed, we have no jurisdiction to review it. MCR 7.203(B)(1); *Westland v Kodlowski*, 298 Mich App 647, 659-660; 828 NW2d 67 (2012), vacated in part on other grounds 495 Mich 871 (2013).[4]

## 2. ADMISSION OF THE GAL'S REPORT AS EVIDENCE

We now turn to whether the trial court's January 6, 2021, order should be reversed because the trial court abused its discretion in admitting the GAL's report into evidence over defendant's objection[5] at the August 12, 2020, evidentiary hearing. Defendant argued against admission of the GAL report in the trial court on the grounds that the GAL opined on matters beyond what her qualifications would allow and that hearsay precluded much of the report and its attachments.

The court rules related to child custody are set forth in Subchapter 3.200 of the Michigan Court Rules. See MCR 3.201(A)(1). Under the Child Custody Act, the trial court may "[u]tilize a guardian ad litem or the community resources in behavioral sciences and other professions in the investigation and study of custody disputes and consider their recommendations for the resolution of the disputes." MCL 722.27(1)(d). The court may also appoint a GAL to represent the child. MCR 3.204(D).[6] Neither Subchapter 3.200 of the Michigan Court Rules nor the Child Custody Act addresses the admissibility of a GAL report.[7]

---

[4] In any event, the order was not an improper delegation of authority because it exempted custody and permanent parenting time decisions from the GAL's recommendations that were to have an immediate effect, meaning that, under the order, the trial court retained responsibility for custody and permanent parenting time determinations. Additionally, for all GAL recommendations that were subject to immediate implementation, there was an ability to obtain a judicial decision on the issue. We also note that, with respect to defendant's application for leave to appeal in Docket No. 354428, this Court denied leave on this delegation-of-authority issue related to the November 2019 order for lack of merit in the grounds presented. That decision is now the law of the case. *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 143-144; 946 NW2d 812 (2019).

[5] We recognize that the trial court previously ruled that the GAL report would be admitted at any subsequent hearing or trial, but defendant's objection to its admission during the hearing preserved the issue for appeal. *In re Weiss*, 224 Mich App 37, 39; 568 NW2d 336 (1997).

[6] In this context, a GAL refers to "an individual whom the court appoints to assist the court in determining the child's best interests. A guardian ad litem does not need to be an attorney." MCL 722.22(g).

[7] In a custody dispute, the trial court may also appoint a lawyer-guardian ad litem (LGAL) for the child. MCL 722.24(2). In comparison to a GAL, the LGAL is expressly authorized by the Child Custody Act to "file a written report and recommendation." MCL 722.24(3). By statute, "[t]he court may read the [LGAL's] report and recommendation. The court shall not, however, admit the report and recommendation into evidence unless all parties stipulate the admission. The parties

In concluding that the GAL's report was admissible, the trial court cited MCR 5.121, which provides for the appointment of a GAL in probate court proceedings. Under MCR 5.121(C), the GAL is required to "conduct an investigation and shall make a report in open court or file a written report of the investigation and recommendations." And, under MCR 5.121(D)(1), that report may be received by the trial court, even if it would not be admissible under the rules of evidence.

The trial court did not err in relying on MCR 5.121 in admitting the GAL report. Although that rule is within the probate subchapter of the court rules, it still applies to proceedings conducted in domestic relation matters. Specifically, MCR 3.201(C) provides that:

> Except as otherwise provided in this subchapter, practice and procedure in domestic relations actions is governed by other applicable provisions of the Michigan Court Rules, except the number of interrogatories set forth in MCR 2.309(A)(2) shall be thirty-five.

Under this rule, "domestic relations actions are governed generally by the Michigan Court Rules, except as otherwise provided in" the domestic relations subchapter, MCR 3.201 *et seq*. 4 Longhofer, Mich Court Rules Practice (7th Ed), § 3201.1. Because the domestic relations subchapter does not address admission of a GAL report, and admission of a report is a matter of "practice and procedure," MCR 5.121 applies, and the trial court did not err in admitting the GAL report into evidence.

### 3. FAILURE TO CONSIDER FACTORS UNDER MCL 722.23

Defendant's more merit-based argument is her challenge to the trial court's decision not to consider the twelve best interest factors contained in MCL 722.23 when ordering the limited parenting time schedule contained in the January 6, 2021, order. To that point, defendant argues that because the parenting time restrictions are so restrictive compared to what she exercised previous to the April 21 order, the January 6, 2021, order changed the children's established custodial environment, and thus effectively was a change in custody.

Plaintiff, not surprisingly, sees things differently. As plaintiff sees it, the trial court was not required to consider the twelve factors enumerated under MCL 722.23, as those factors govern a custody decision, and the parties removed the issue of custody from the court's consideration through the December 9, 2020, stipulated custody order entered during the progression of the hearing. As a result, the trial court only considered the scope of parenting time and properly considered the relevant factors under MCL 722.27a(7).

We conclude that the trial court did not abuse its discretion in entering the January 6, 2021, parenting order. First, the court made explicit findings that the children's unsupervised parenting time with defendant should be suspended and replaced with limited video parenting time. Although these restrictions are severe, the court based that decision on its finding that clear and

---

may make use of the report and recommendation for purposes of a settlement conference." MCL 722.24(3).

-5-

convincing evidence showed that continued unsupervised parenting time with defendant would cause the children mental and emotional harm. MCL 722.27a(3) specifically provides the court with the authority to discontinue parenting time upon such a finding, *Rozek v Rozek*, 203 Mich App 193, 194-195; 511 NW2d 693 (1993), and the court's detailed findings to that effect were supported by much of the evidence produced during the evidentiary hearing.[8] We give deference to the trial courts factual findings, and we cannot conclude that it clearly erred in making these findings.

Second, we do not consider the January 6, 2021, order as effecting a change in custody, despite its significant restrictions. Although, as defendant argues, a parenting time order containing significant changes to the amount of time the children spend with the parents can effectively modify the children's established custodial environment such that it should be considered a change in custody, *Lieberman*, 319 Mich App at 84, here the parties had just stipulated on the record—a mere two days prior to the decision on parenting time—to give plaintiff full legal and physical custody of the children. The record is clear that during the December 7, 2020, hearing, the parties informed the court that the pending custody issue was resolved, and after placing the terms on the record, counsel and the court questioned the parties about their agreement, and why they were entering into it. The agreement left the extent of parenting time to the court. Only after that testimony (and having already heard four days of evidence on the pending motions/objections regarding custody and parenting time) did the court approve the stipulation, and ultimately enter an order awarding custody to plaintiff. This agreement, and the court's approval of it after questioning the parties and hearing four days of testimony on the issue of custody and parenting time, was sufficient to ensure the court that the custody arrangement was in the children's best interests, *Harvey v Harvey*, 470 Mich 186, 192-193; 680 NW2d 835 (2004) ("Our requirement under such circumstances is that the court satisfy itself concerning the best interests of the children. When the court signs the order, it indicates that it has done so. A judge signs an order only after profound deliberation and in the exercise of the judge's traditional broad

---

[8] We recognize that the initial order substantially reducing defendant's parenting time was entered on April 21, 2020, and the final parenting time order was not entered until January 6, 2021. This delay between orders was caused by several factors, including having to coordinate the parties' and court's schedule to arrange the numerous dates for the evidentiary hearing, and somewhat by the delays caused by the state-mandated lockdowns during the early stages of the Covid-19 pandemic. However, before entering the April 21 order, the court held a telephonic hearing to allow the parties to argue over the recommendations contained in the lengthy GAL report (issued March 16, 2020), which included defendant's objections to the recommendation to suspend her unsupervised parenting time. Additionally, the record shows (and trial counsel for both parties repeatedly recognized) that throughout this time period, the trial court expended substantial time and attention to this highly contentious matter, addressing various issues raised during the time that the hearings were occurring. Finally, we note that defendant's request to appeal the April 21, 2020, order was denied by this Court as moot, presumably because of the on-going evidentiary hearing, *Mildenberg v Mildenberg*, unpublished order of the Court of Appeals, entered September 28, 2020 (Docket No. 354428), and that order was not appealed in this current application.

discretion."), and that it did not result from fraud, mutual mistake, or duress, see *Myland v Myland*, 290 Mich App 691, 700-701; 804 NW2d 124 (2010).

For these reasons, the parenting time order did not change custody, and the parties had no expectation that it would do so, given their stipulation to custody a few days earlier. As a result, the trial court did not err in considering the factors outlined in both MCL 722.27a(3) and (6) in crafting the parenting time order.[9]

### 4. RESTRICTIONS ON MOVING TO MODIFY PARENTING TIME

We now turn to defendant's argument that the trial court erred by conditioning defendant's ability to seek an increase in her parenting time under MCL 722.27(1)(c) on her completion of a mental-health assessment, her participation in 12 months of counseling, and her demonstrated improvement on a psychological evaluation. In pertinent part, the trial court's order stated:

> IT IS FURTHER ORDERED that Defendant shall not file any petition *to increase her parenting time* until: (1) after the evaluation is completed and Defendant has undergone treatment for at least 12 months; and (2) then, Defendant shall be required to undergo another psychological evaluation to demonstrate progress after 12 months of treatment. [Emphasis added.]

MCL 722.27(1)(c), however, contains restrictions on when a court can modify or amend a prior judgment or order:

> (c) Subject to subsection (3), modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age and, subject to section 5b of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605b, until the child reaches 19 years and 6 months of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child. [MCL 722.27(1)(c).]

"These initial steps to changing custody—finding a 'change of circumstance or proper cause' and not changing an 'established custodial environment' without clear and convincing evidence—are intended to 'erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders.' " *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003), quoting in part *Heid v AAASulewski* (*After Remand*), 209 Mich App 587, 593; 532 NW2d 205 (1995). These requirements serve as "a barrier

---

[9] Defendant argues that the process employed here is similar to what occurred in the trial court in *O'Brien*, 507 Mich 976. There are two major distinguishing factors from that case, however. First, there was no stipulation to custody in *O'Brien* as there was here. Second, *O'Brien* involved an appeal of right, *O'Brien v D'Annunzio*, unpublished per curiam opinion of the Court of Appeals, issued February 27, 2020 (Docket No. 347830), p 1, and thus the parties and appellate courts could address any challenged interlocutory orders entered well before the final order.

to the removal of children from established custodial environments and to minimize disruptive changes to custody arrangements," *Kaeb*, 309 Mich App at 567, and serve as restrictions on a parent's ability to seek modification of an existing custody or parenting-time order.

We initially recognize that the order is clear in that it only limits defendant from filing a motion to *increase her* parenting time, and nothing more. In other words, under the order defendant is free to file a motion seeking to decrease, eliminate or otherwise modify the existing custody or parenting time provisions, so long as she is not seeking to increase her parenting time. Be that as it may, the order nonetheless conflicts with MCL 722.27(1)(c), to the extent it prevents defendant from seeking a change in her parenting time no matter what changes take place in the children's lives or those of the parties before defendant completes 12 months of counseling and demonstrates improvement on a mental-health assessment. Such inflexible barriers to modification of an existing order are not in accord with the legislatively mandated guidelines within MCL 722.27(1)(c). Under MCL 722.27(1)(c), the trial court must consider whether to change custody or parenting time *whenever* proper cause or change in circumstances exists. These are the only pre-conditions the legislature established for seeking a change in parenting time. The trial court's order places additional pre-conditions on defendant seeking to change parenting time, and though practically speaking, the pre-conditions may make sense under these circumstances, they cannot form the basis of an order containing a *blanket prohibition* on seeking an increase in defendant's parenting time. That part of the January 6, 2021, order must be vacated. If a parent abuses that process by repeatedly seeking unwarranted modification of prior orders, the court has available to it other permissible means to address overly-litigious parties, such as sanctions. And it is to that issue we now turn.[10]

## II. DOCKET NO. 358328

In Docket No. 358328, defendant challenges the August 6, 2021, order entitled "Order Following Hearing," awarding $59,387.88 in attorney fees to plaintiff. Also challenged is a separate order entered the same day (entitled "Order Dismissing Defendant's Filing Pursuant To MCR 2.602(c) And Ordering Attorney Fees") that embodies the courts conclusion that defendant's objections to a seven day order were frivolous. Defendant argues that the attorney fees awarded were not warranted under MCR 1.109(E) or MCR 3.206(D)(2)(b), and that if they were warranted, the court went too far back in time for what fees were recoverable.

### A. STANDARD OF REVIEW

A trial court's decision whether to award attorney fees is reviewed for an abuse of discretion. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes."

---

[10] Plaintiff contends that under *Kaeb*, a trial court may place conditions on a parent's ability to seek modification of an existing custody or parenting-time order. However, in *Kaeb*, this Court considered whether the trial court could order alcohol treatment as a condition on exercising parenting time; we did not address whether a trial court may order completion of treatment as a condition precedent to seeking modification of an existing custody or parenting-time order under MCL 722.27(1)(c). *Kaeb*, 309 Mich App at 569.

*Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). Any underlying factual conclusions, including whether an action was frivolous, are reviewed for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. Any questions of law are reviewed de novo. *Reed*, 265 Mich App at 164.

Attorney fees are not recoverable unless expressly allowed by statute, court rule, common-law exception, or contract. *Id*. at 164. Pursuant to MCR 1.109(E), attorney fees may be awarded if a party, or attorney, signs a document that is not well-grounded in the fact and law. In relevant part, MCR 1.109(E) provides:

> (5) *Effect of Signature*. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;
>
> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> (6) *Sanctions for Violation*. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

The basic question under this court rule is whether an individual has made a reasonable inquiry into both the factual and legal basis of a document before it is signed. *Kelsey v Lint*, 322 Mich App 364, 379; 912 NW2d 862 (2017). "The reasonableness of the inquiry is determined by an objective standard and depends on the particular facts and circumstances of the case." *Id*. (quotation marks and citation omitted). A filing is not frivolous merely because a party does not ultimately prevail. *Kitchen*, 465 Mich at 662.

## B. DEFENDANT'S SEVEN-DAY OBJECTIONS

Plaintiff's attorney-fees demand is related in part to having to respond to defendant's objections filed under the seven-day rule, contained in MCR 2.602(B)(3)(b), and which provides:

> (3) Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing

if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice. The party must file with the court clerk the notice and proof of service along with the proposed judgment or order.

    (a) If no written objections are filed within 7 days of the date of service of the notice, the judge shall sign the judgment or order if, in the court's determination, it comports with the court's decision. If the proposed judgment or order does not comport with the decision, the court shall direct the clerk to notify the parties to appear before the court on a specified date for settlement of the matter.

    (b) *Objections regarding the accuracy or completeness of the judgment or order must state with specificity the inaccuracy or omission.* [Emphasis added.]

Under this court rule, appropriate objections are to the "form" of the order, focusing on the "conformity of the proposed order with the court's decision." *Riley v 36th Dist Court Judge*, 194 Mich App 649, 650; 487 NW2d 855 (1992). In other words, a party may not use a seven-day objection to challenge the substance of the trial court's ruling; instead, objections must be to the form of the order, including the accuracy of the language and whether the order states the trial court's ruling with completeness. See *id.*; MCR 2.602(B)(3)(b).

To provide context for defendant's seven-day objections, some additional detail regarding the proceedings is required. Specifically, in addition to the provisions already discussed, the trial court's order entered on January 6, 2021, included a provision stating that the children's therapist, Betsy Bennett, would have to give her approval before defendant would be allowed to have unsupervised parenting time with the children. Following entry of the order, Bennett sent an ex parte communication to the trial court, objecting to this role and stating that she had not agreed to serve in this role. Bennett's objections were considered at a January 22, 2021, status conference. At that conference, Bennett's role was clarified, as were several other issues raised by the parties. For example, plaintiff asked the trial court (1) to prevent or limit defendant's communications with Bennett, (2) to prevent or limit defendant's communications with plaintiff and plaintiff's attorney, and (3) to order defendant to give property in defendant's house to the children, or specifically, FM.

With respect to Bennett's role in making unsupervised parenting-time decisions, the trial court clarified that it had only intended to include Bennett as a "failsafe" and that it would not want her to actually make any decision. Bennett was present, reiterating that she did not want to serve in this role and that she "just wanted [herself] removed from these documents." In response to Bennett's comments, plaintiff asked whether the language in the previous order could be modified to state that the trial court "could ask" for Bennett's feedback on unsupervised parenting time. The trial court never specifically addressed this request, instead stating that it never intended to "put [Bennett] in the middle of the case" or to "make her the decision-maker" of custody or parenting-time decisions, which would be the court's purview. With regard to the other issues, the trial court declined to limit defendant's communication with Bennett. The trial court also denied plaintiff's request to prevent defendant from contacting plaintiff. And the trial court ordered defendant to give property to FM. In the course of its rulings, the trial court also addressed an issue relating to release of Bennett's records, noting that Bennett's records were confidential and

that she did not need to release records to either parent; instead, it would be "up to the children as to what should be released to the parents."

Following the January 22 conference, plaintiff submitted a proposed order under MCR 2.602(B)(3). Defendant, who was then proceeding *in propria persona*, filed objections to the order. First, defendant noted that, contrary to the requirements of MCR 1.109, plaintiff failed to include the entirety of her correct contact information on the order (her correct P.O. Box was on the caption, as well as her correct email, but not her phone number; also, her old non-mailing address was on the caption). Second, defendant noted that plaintiff's order did not indicate that there was no limitation on the communication between the parties, despite the trial court making such a ruling, and the order did not provide that it would be up to the children whether their records were released. Defendant asserted that the trial court's ruling regarding giving property to the children was specific to FM, but the proposed order inaccurately referred to "the children." And defendant asserted that the trial court had not actually granted plaintiff's request to include language to the effect that the trial court could seek Bennett's opinions and recommendations on unsupervised parenting time, but plaintiff had included such language in his proposed order.

At the hearing on defendant's objections, the court found defendant's objections to be without merit and entered the order as proposed by plaintiff, but only after plaintiff provided the trial court with an updated order that accurately reflected defendant's complete contact information. Although declaring defendant's objections to be without merit, the trial court indicated that defendant was in fact correct in some of her assertions. For example, although the trial court repeatedly mentioned that "the children" needed property from defendant's house, it became clear that all understood that it was only FM who would needed things from the house. Thus, the court had actually ordered that defendant had to give property to FM, not the children. But the trial court saw nothing "inappropriate" in use of the word "children" in the order. The trial court also noted that there was language that the trial court used in its oral decision that plaintiff did not include in the order, but the trial court characterized those remarks as "dicta." And the trial court acknowledged that defendant was correct that there were certain things stated by the trial court that were missing from the order—like the trial court's denial of a restriction on defendant's ability to communicate with plaintiff. But because the court denied these proposed restrictions, it concluded that there was no need to place them in the order, as the absence of restrictions established the freedom to communicate. Ultimately, the trial court entered the order as drafted by plaintiff, while stating that plaintiff could seek sanctions related to responding to defendant's meritless objections.

On this record, the trial court clearly erred by concluding that defendant's objections warranted sanctions under MCR 1.109(E). A review of the trial court's January 22nd rulings in comparison to the order drafted by plaintiff shows that some of defendant's objections were well-founded in the facts, particularly given her in pro per status at the time.

For example, although plaintiff emphasizes that it is a minor error, the fact remains that some of defendant's contact information on the order was not complete or accurate, and MCR

1.109(D)(1)(b)(*vi*) requires that it be so.[11]  Defendant's objecting to the inclusion of incorrect information in the order was reasonable.  More substantively, with regard to the proposed order stating that defendant should return property to "the children," there is an obvious difference between giving property to FM and giving property to the children, and the trial court's ruling was that defendant had to give property to FM.  It may be a mere matter of semantics, but a more clearly drafted order would avoid future problems/issues related to whom defendant was to provide personal property.

Defendant also objected to several "rulings" that were not contained in the order: (1) the trial court's denial of plaintiff's request to prevent defendant from communicating with him; (2) the trial court's reference that the children would have to approve the release of their records, even though the trial court did state this at the hearing, and (3) although plaintiff specifically asked the trial court to modify the previous order to include language to the effect that the trial court could seek Bennett's opinions and recommendations on unsupervised parenting time, the trial court did not actually address or approve plaintiff's request.  The trial court did not clearly err in determining that these matters were not required or intended to be placed in an order, as they involved either rulings made that would be effective without their inclusion in the order (for example, by not including the denial of requested restrictions in the order, there naturally would be no restrictions placed on the parties' communications), or were matters of minor clarification.

But that said, overall defendant identified several inaccuracies and missing rulings from plaintiff's proposed order.  Under MCR 2.602(B)(3)(b), these are the types of challenges to the accuracy and completeness of a proposed order that seven-day objections are intended to address.  Defendant had a legal or factual basis for some of her objections, and for those that were properly rejected, it is difficult to conclude that they were frivolous given that the "rulings" were made, but were not necessary for inclusion in the order, a distinction that may not be clear to an unrepresented party.  Defendant's seven-day objections were not frivolous, and attorney fees were not appropriate in relation to those objections.

## C.  VIOLATION OF ORDERS RELATED TO BEGINNING THE CHILDREN'S THERAPY

The trial court's primary basis for sanctioning defendant appeared to be based on its conclusion that defendant had unreasonably delayed compliance with numerous orders regarding the children's counseling.  MCR 3.206(D)(2)(b).

Attorney fees may be awarded under MCR 3.206(D)(2)(b) when "the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules."  As we have previously stated, MCR 3.206(D)(2) authorizes attorney fees on the basis of "a party's bad behavior," *Cassidy v Cassidy*, 318 Mich App 463, 481; 899 NW2d 65 (2017), and it specifically provides for attorney fees incurred as a result of a party's failure to comply with a previous court order.

---

[11] "The first part of every document must contain a caption stating . . . the name, an address, and telephone number of each party appearing without an attorney."  MCR 1.109(D)(1)(b)(*vi*).

To award fees based on a violation of a court order, the trial court must make a factual determination that a party violated a court order, that this misconduct caused the party to incur fees, and that those fees were reasonable. *Reed*, 265 Mich App at 165-166. The party seeking attorney fees bears the burden of proof. *Id*. Further, although MCR 3.206(D)(1) provides that a request for attorney fees may be brought at "any time," this Court's caselaw makes clear that a request must be made "within a reasonable time after the fees sought were incurred and that what constitutes a reasonable time depends on the particular facts and circumstances of each case." *Colen v Colen*, 331 Mich App 295, 304; 952 NW2d 558 (2020).

Plaintiff specifically sought attorney fees and costs incurred from May 5, 2016, until April 30, 2021, relating to obtaining counseling for the children. The trial court concluded that attorney fees were appropriate because of defendant's "flagrant" violation of previous orders that resulted in "hindering" and "frustrating" the children's efforts to begin therapy, and included in its award fees that were incurred since May 2016.

After review of the relevant record, we conclude that the trial court's findings were, for the most part, not clearly erroneous, and its decision to sanction defendant under MCR 3.206(D)(2) was not an abuse of discretion. As to our conclusion that part of the trial court's findings were clearly erroneous, the record is undisputed that the trial court awarded attorney fees from May 5, 2016, until April 30, 2021, on the basis that defendant violated orders that prevented the children from beginning counseling. However, the record discloses that the children were in counseling with Corfman until August 2016, while at the other end of the timeframe, the children have been in counseling with Bennett since March 2020. Thus, to the extent the trial court awarded plaintiff attorney fees for time expended before August 2016 or after March 2020, on the basis that defendant prevented the children from beginning therapy, it was an abuse of discretion.

Apart from the post-March 2020 fees and the pre-August 2016 fees that should not have been awarded, the trial court's award of attorney fees was otherwise not an abuse of discretion. The record shows that orders regarding parenting time and counseling were entered on August 16, 2016, and again in April of 2017, June of 2018, July of 2019, and on January 6, 2021. The trial court was aware of these orders, and plaintiff submitted detailed information—as well as offered to present witnesses backing up the submitted exhibits—that revealed the actions or inactions of defendant that caused delay, or frustrated implementation of, the counseling. Given that this same judge presided over the case since its inception, and was intimately familiar with the orders and the difficulties caused by defendant to implement the children's therapy under these orders, we cannot conclude that the trial court clearly erred in finding that defendant's actions violated the orders entered since 2016, which had the goal of securing therapy for the children. We can discern no abuse of discretion and note that at oral argument before this Court, defendant effectively dropped any challenge to the reasonableness of the award vis-à-vis the hourly rate and time expended. *Pirgu*, 499 Mich at 274.

## III. CONCLUSION

In Docket No. 357175, we vacate in part the January 6, 2021, parenting time order and remand for modification of that order. In Docket No. 358328, we vacate in part the August 6, 2021, order to the extent it awarded attorney fees expended pre-August 2016 and post-March 2020, and remand for an adjustment to the amount awarded. Because MCR 3.206(D)(2)(b) only allows

-13-

attorney fees when a party has the *ability* to comply with a court order, the trial court shall also make an express finding as to whether defendant has the ability to pay the ultimate amount awarded. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford